JINA L. CHOI (N.Y. Bar No. 2699718)
C. DABNEY O'RIORDAN (Cal. Bar No. 205158)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
  schneidere@sec.gov
JEREMY E. PENDREY (Cal. Bar No. 187075)
  pendreyj@sec.gov
E. BARRETT ATWOOD (Cal. Bar No. 291181)
  atwoode@sec.gov
ANDREW J. HEFTY (Cal. Bar No. 220450)
  heftya@sec.gov
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
T: (415) 705-2500
F: (415) 705-2501

ERIC M. BROOKS (Cal. Bar No. 209153)
  brookse@sec.gov
SECURITIES AND EXCHANGE COMMISSION
33 Arch Street, 23rd Floor
Boston, MA 02110-1424
(617) 573-8900

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| MICHAEL B. ROTHENBERG, and ROTHENBERG VENTURES LLC (f/k/a FRONTIER TECHNOLOGY VENTURE CAPITAL LLC and ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC), | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against Defendants Michael B. Rothenberg ("Rothenberg") and Rothenberg Ventures LLC (f/k/a/ Frontier Technology Venture Capital LLC and Rothenberg Ventures Management Company, LLC) ("RVMC") (collectively, "Defendants"):

**SUMMARY OF THE ACTION**

1. This case arises out of Defendants' scheme to defraud both the venture capital funds they manage and the investors in those funds. According to documents filed with the Commission, the venture capital funds have nearly 200 investors and over $64 million of assets under management. The venture capital funds were established with the purpose of investing primarily in equity of early-stage technology companies.

2. In furtherance of their scheme, Rothenberg, an investment adviser, and RVMC, the investment advisory firm Rothenberg founded and managed, used various deceptive acts to both (i) misappropriate fund and fund investor money; and (ii) create the false appearance that the money was used for legitimate fund expenses or investments or had otherwise been paid back. Defendants used the misappropriated funds to finance Rothenberg's personal business ventures, and their deceptive acts have allowed them to continue their scheme for years.

3. Defendants began misappropriating money from the funds they managed in 2015. Over the course of 2015, the amounts Defendants took increased and Defendants engaged in increasingly frequent acts of concealment to hide their scheme. Defendants' scheme continued at least through 2017. Based on accounting records obtained from RVMC, it is estimated that by April 2017, Defendants had misappropriated millions of dollars from the venture capital funds and fund investors.

4. Defendants' scheme included numerous deceptive acts, including (among others things) the following: (i) taking fees from the venture capital funds (which were the Defendants' advisory clients) before they were owed to RVMC; (ii) taking fees in excess of what they could be entitled to earn over the entire life of the venture capital funds they managed; (iii) misappropriating investor money intended for a single-investment fund; (iv) improperly using money from one of the venture capital funds to collateralize a bank line of credit extended to RVMC, which Defendants then used to conceal their prior misappropriation from the fund; (v) entering into undisclosed transactions to paper over

misappropriated investor money; and (vi) misappropriating proceeds from the sales of successful fund investments to conceal prior misappropriation.

5. As a result of their fraudulent conduct and breaches of fiduciary duty to their advisory clients, Defendants have violated and will continue to violate the federal securities laws. In order to protect the clients, investors and the public, the Commission seeks an order enjoining Defendants from further violations of the federal securities laws, ordering Defendants to disgorge any ill-gotten gains or benefits derived as a result of their violations, and prejudgment interest thereon, to pay civil money penalties, and providing for other equitable and related relief as may be appropriate.

## VIOLATIONS

6. Rothenberg has engaged in, and unless enjoined, will continue to engage, directly or indirectly, in transactions, acts, practices, and courses of business that constitute violations of Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1), (2), and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

7. RVMC has engaged in, and unless enjoined, will continue to engage, directly or indirectly, in transactions, acts, practices, and courses of business that constitute violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2), and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to the authority conferred on it by Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)]. The Commissions seeks an order permanently restraining and enjoining Defendants from engaging in the conduct, acts, practices, and courses of business alleged herein, and for such other equitable relief as may be appropriate or necessary for the benefit of investors. The Commission also seeks a final judgment ordering Defendants to disgorge their ill-gotten gains and pay prejudgment interest thereon, and to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9(e)].

9. The Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14], and 28 U.S.C. § 1391.

10. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain transactions, acts, practices and courses of business that form the basis for the violations alleged in this Complaint occurred in San Francisco, California.

**INTRADISTRICT ASSIGNMENT**

11. Under Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division because a substantial part of the events or omissions that give rise to the claims alleged herein occurred in San Francisco County, and Defendant Rothenberg resides in San Francisco.

**DEFENDANTS**

12. **Michael B. Rothenberg**, 34, resides in San Francisco, California and is the founder of RVMC. Rothenberg has referred to himself as the manager, owner, and operator of RVMC. Rothenberg has been responsible for making all final decisions regarding the strategy, investments, and operations of the funds managed by RVMC.

13. **Rothenberg Ventures LLC** is an exempt reporting adviser that files a Form ADV (Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Advisers) annually with the Commission. Rothenberg Ventures LLC was formed as a Delaware limited liability corporation on or about September 5, 2012. At the time, it was named Rothenberg Ventures Management Company, LLC. It registered as a foreign limited liability corporation with the State of California on or about August 8, 2013. On or about September 12, 2016, this entity changed its name in Delaware to Frontier Technology Venture Capital LLC and on or about December 15, 2016, filed this name change in California. On or about March 31, 2017, this entity changed its name in Delaware to Rothenberg Ventures LLC and on or about October 16, 2017, filed this name change in California. According to its April 2, 2018 filing with the Commission, this entity conducts business under the name Rothenberg Ventures Management Company, LLC, and its principal place of business is in San Francisco, California. This entity is referred to herein as "RVMC."

## RELEVANT ENTITIES

14. **Rothenberg Ventures 2013 Fund, LLC** ("2013 Fund") is a Delaware limited liability company incorporated on or about September 4, 2012, as Rothenberg Ventures Fund I, LLC. Rothenberg Ventures Fund I, LLC registered as a foreign limited liability company in the State of California on or about October 6, 2014. On or about May 16, 2016, this entity changed its name in Delaware to Rothenberg Ventures 2013 Fund, LLC, and on or about April 26, 2017, registered in California under the same name. The 2013 Fund invests primarily in equity of early-stage technology companies. According to documents filed with the Commission, by November 2013, the 2013 Fund had raised approximately $4.77 million from 23 investors.

15. **Rothenberg Ventures 2014 Fund, LLC** ("2014 Fund") is a Delaware limited liability company incorporated on or about September 4, 2013, as Rothenberg Ventures Fund II, LLC. Rothenberg Ventures Fund II, LLC registered as a foreign limited liability company in the State of California on or about December 26, 2013. On or about May 16, 2016, this entity changed its name in Delaware to Rothenberg Ventures 2014 Fund, LLC, and on or about April 26, 2017, registered in California under the same name. The 2014 Fund also invests primarily in equity of early-stage technology companies. According to documents filed with the Commission, by May 2015, the 2014 Fund had raised approximately $11.75 million from 96 investors.

16. **Rothenberg Ventures 2015 Fund, LLC** ("2015 Fund") is a Delaware limited liability company incorporated on or about December 10, 2014. The 2015 Fund registered as a foreign limited liability company in the State of California on or about August 14, 2015. The 2015 Fund also invests primarily in equity of early-stage technology companies. According to documents filed with the Commission, by May 2016, the 2015 Fund had raised approximately $24.62 million from 62 investors.

17. **Rothenberg Ventures 2016 Fund, LP** is a Delaware limited partnership organized in 2015, which is affiliated with a Cayman Islands exempted limited partnership, **Rothenberg Ventures 2016 Feeder Fund, LP**, which RVMC intended to utilize for the facilitation of investment by non-U.S. investors. Together, these funds are referred to herein as the "2016 Fund." The 2016 Fund invests primarily in equity of early-stage "frontier technology" companies. According to documents filed with the Commission, by May 2016, the 2016 Fund had raised approximately $23.18 million from 17

investors.

18. **Rothenberg Ventures 2016 Fund Co-Fund Unity LLC** ("Co-Fund") was, according to RVMC's promotional materials, formed as a Delaware limited liability company in 2016. According to the promotional materials, it was formed with the intent to invest in a special purpose vehicle that would purchase the securities of a privately held technology company, and RVMC was to be the manager of the Co-Fund.

19. **River Studios LLC** ("River Studios") is a Delaware limited liability company. It was originally incorporated as Bend Reality, LLC in the State of Delaware on or about December 18, 2014. On or about April 20, 2016, this entity changed its name to River Studios LLC. According to RVMC's promotional materials and offering memoranda, this entity has conducted business as River Studios, River Racing, River Store, and River House. Rothenberg is Chief Executive Officer, founder, and majority owner of River Studios.

## FACTUAL ALLEGATIONS

**A.    Background**

20. RVMC is the investment adviser to a number of venture capital funds, including the 2013 Fund, 2014 Fund, 2015 Fund, and 2016 Fund (collectively, the "Rothenberg Funds" or "Funds"). In the promotional materials and offering memoranda for the Rothenberg Funds, RVMC is identified as the manager of the Funds.

21. Rothenberg purports to control RVMC and he has held himself out to the Rothenberg Funds' investors as its control person. For example, in the promotional materials of the 2013 Fund, the Fund's manager is identified as RVMC, "an entity controlled by Michael Rothenberg." The offering memoranda of the 2013 Fund, 2014 Fund, and 2015 Fund identify Rothenberg as the founder of these funds, owner of RVMC, and the final decision-maker for the "strategy, investments, and day-to-day operations of the Fund[s] on behalf of [RVMC]."

22. Rothenberg utilized a number of legal entities throughout the relevant time period. Certain entities are discussed in the promotional materials and offering memoranda for the Rothenberg Funds, which identify Rothenberg as the entities' manager. Such entities include "Rothenberg Investments Inc., a Texas corporation with real estate holdings in Texas;" "Rothenberg Ventures LLC, a

Delaware corporation [] involved in real estate transactions in California;" and "Bend Reality LLC, a Delaware corporation, also doing business as River Studios, River Racing, River Store, and River House, formed for the purpose of enhancing [RVMC's] branding and positioning in the virtual reality sector..."

23. In 2012, Rothenberg founded RVMC and formed the 2013 Fund while attending Harvard Business School. Defendants raised over $4 million for the 2013 Fund.

24. In 2013, Rothenberg moved his investment advisory business to the San Francisco Bay Area. Defendants also formed the 2014 Fund, which raised almost $12 million.

25. While the 2013 and 2014 Funds focused on an array of early-stage technology companies, over time, Defendants began to focus their attention on investments in the virtual reality sector.

26. In 2014, Rothenberg formed the 2015 Fund, which ultimately raised more than $20 million. According to the Fund's offering memorandum, the invested funds were to be used "to invest in one or more 'early-stage' companies … focused on technology-enabled companies such as e-commerce, mobile, digital media, social networking and software."

27. In 2015, Rothenberg formed the 2016 Fund to invest primarily in equity of early-stage "frontier technology" companies. Defendants purportedly raised over $23 million for the 2016 Fund.

**B.  Rothenberg's "River" Brand**

28. In addition to growing his investment advisory business, Rothenberg sought to create his own business ventures. Rothenberg often referred to his commercial enterprise as the "River Ecosystem" or the "River brand." While Rothenberg's business concepts appear to have been amorphous and evolving over time, RVMC's marketing materials for the 2015 and 2016 Funds state that Rothenberg manages businesses under "the River brand, which includes a virtual reality accelerator, a production studio, a racing team, an online store, and other business ventures." The River brand at least included several business ventures Rothenberg founded and operated, including River Studios and the "River Accelerator."

29. River Studios, which Rothenberg formed in late 2014, consisted of a number of Rothenberg's personal commercial projects, including a car racing team and an online store. The

primary focus of the entity conducting business as River Studios, however, was a studio that created original virtual reality content.

30. Defendants marketed the River Accelerator as an incubator for early-stage technology companies (*i.e.*, "startups"). In exchange for providing these startups with office space, guidance, networking connections to venture capitalists and fellow entrepreneurs, and at times, capital, the startups would provide "Rothenberg Ventures" with equity and/or warrants in themselves.[1] The startups that were admitted to the River Accelerator typically entered into agreements formalizing their relationships with "Rothenberg Ventures." Rothenberg executed these agreements on behalf of "Rothenberg Ventures," usually defined in the agreements as RVMC, RVMC's managers (which would include Rothenberg personally), any fund RVMC managed, or any investor approved by "Rothenberg Ventures" and the startup.

31. Defendants marketed River Accelerator as a unique investment opportunity for the RVMC-managed venture capital funds. RVMC advertised the opportunity to invest in the River Accelerator startups (sometimes identified as the "River Investments"), and in certain promotional materials for the 2015 and 2016 Funds, specific capital amounts were disclosed as being allocated to investing in such companies.

32. Rothenberg and RVMC marketed the River brand to potential venture capital fund investors as a vehicle that would benefit them by creating synergies between technology startups, entrepreneurs, and investors. RVMC's promotional materials extolled the virtues of its Silicon Valley connections and marketed itself as the venture capital firm for millennials; claiming to be the venture capital "firm most uniquely positioned to find talented, Millennial founders."

33. While Defendants highlighted the River brand as a means to increase the profile of RVMC and its branding in the virtual reality sector, Defendants did not adequately disclose to the Funds' investors that the Rothenberg Funds would invest in the River brand companies themselves (*e.g.*, River Studios or the business ventures Rothenberg operated using that entity's legal name).

---

[1] Warrants are a security that gives their holder the right, but not the obligation, to purchase equity in a company under certain conditions in the future.

34. In 2014, Rothenberg moved his investment adviser business to the technology-centric neighborhood of South of Market (also known as SOMA) in San Francisco, California. Rothenberg also used one of his entities to purchase a large three-story commercial building in SOMA. RVMC moved its principal place of business to this location and leased its office space from Rothenberg's entity. Rothenberg also offered office space to startups that joined River Accelerator.

35. Unfortunately, Rothenberg's expenditures greatly outpaced that of the River brand's income. In 2015, RVMC's finance director began warning Rothenberg that he must cut expenses at RVMC and River Studios.

36. Rather than heeding that advice, Defendants continued (and in many ways accelerated) their scheme to defraud the Rothenberg Funds and the Co-Fund. Rothenberg misused the money taken from his clients to fund his personal business ventures (primarily by sinking millions into River Studios) and his lifestyle. And all the while, in furtherance of this scheme, Defendants continued to employ various deceptive acts and practices to hide their misappropriation and to create the false appearance that they were legitimate fund expenses or investments. Defendants' deceptive acts and practices in furtherance of this scheme, and in breach of their fiduciary duties to their clients, include the following: (i) misappropriating money from the Rothenberg Funds in excess of the amount of fees that RVMC could possibly earn over the contractual lifetimes of the Funds; (ii) misappropriating over $1 million of investor capital intended for the Co-Fund in order to pay expenses, personally benefit Rothenberg, and invest in the 2016 Fund; (iii) improperly using money from the 2015 Fund to secure a bank line of credit to RVMC; and (iv) entering into a series of undisclosed self-dealing transactions to paper these fraudulent transactions as supposed investments.

**C.  Defendants Misappropriated Money from the Rothenberg Funds**

37. When they formed the 2013 Fund, Defendants created a front-loaded fee structure, which was disclosed to investors in the 2013 Fund offering memorandum. In the first year of the Fund, each investor would provide all of their committed capital at the time they invested, and at the same time, each investor would be charged a one-time management fee consisting of 17.75% of their invested capital.

38. In the 2013 Fund's offering memorandum, Defendants represented that this 17.75%

management fee was "equal to the median cumulative management fee of venture capital firms according to research … on 94 venture capital funds with a median size of $225 million." They further represented that the management fee would be used to cover the management company's expenses incurred "in connection with the Fund's activities (including, without limitation, salaries, overhead and the costs and expenses incurred in connection with the organization of and the offering of Interests in the Fund)."

39. While continuing to use a front-loaded fee structure, Defendants modified the fee structure that would be used for the 2014 Fund to reduce the amount of fees that were front loaded. Each investor was again required to provide all of their committed capital at the time each invested in the Fund. But, as disclosed in the 2014 Fund offering memorandum, the management fee was to be (i) 2% of each investor's capital contribution per quarter for a period of two years, and (ii) 0.5% of each investor's capital contribution per year for a period of the remaining eight years of the Fund's contractual life. This equates to each investor paying management fees equaling 16% of their invested capital over the first two years of the Fund plus 4% of their invested capital over the remaining eight years of the Fund (*i.e.*, 20% of invested capital during the 10-year contractual lifetime of the Fund).

40. In the 2014 Fund's offering memorandum, Defendants represented that because each investor makes its full capital contribution on the date they invest, the 2014 Fund:

> will be responsible for making the payments over time as provided above…. The schedule for payment of the [management fee] reflects the business model of the Fund, which is to complete diligence and make investments during the first two years of the Fund and to administer the Fund the final eight years.

The 2014 Fund's management agreement with RVMC also provided that the Fund would "be responsible for making the [fee] payments over time as provided above." Defendants also represented in the 2014 Fund's offering memorandum that the management company would pay all expenses incurred on behalf of the 2014 Fund except that the Fund would pay for expenses relating to its investment actions (*e.g.*, the costs incurred in acquiring, holding, or selling of Fund assets) and the costs of financial statements and other reports.

41. Defendants again changed their fee structure when forming the 2015 Fund, further

reducing the amount of fees that were front loaded. According to the amended and restated operating agreement between the 2015 Fund and RVMC dated March 2015, each investor is to pay a yearly management expense fee equal to 1.75% of their invested capital for 10 years, which equals a total management fee of 17.5% over the Fund's 10-year contractual life. However, two years' worth of management fees was to be paid upfront. The operating agreement also provides that each investor is to pay a yearly administrative expense fee equal to 1% of their invested capital for a period of 10 years, which is payable in the first year of the Fund. In sum, under the 2015 Fund's operating agreement with RVMC, investors were to pay 13.5% of their capital contribution in fees during the first year of the Fund and 1.75% per year between the third and tenth year of the Fund, totaling 27.5% of fees over the 10-year life of the Fund.

42.     The amended and restated management agreement between the 2015 Fund and RVMC provides that the management company would use the collected management expense and administrative expense fees to pay all expenses incurred on behalf of the 2015 Fund except for certain distinct exceptions: (i) legal, auditing and accounting services provided to the 2015 Fund; (ii) fees for investment banking, custodial and registration services provided to the 2015 Fund; and (iii) fees and expenses with respect to litigation and threatened litigation against the 2015 Fund. While their language differs, the various offering memoranda for the 2015 Fund similarly provide that RVMC would use the administrative and management expense fees to cover most expenses incurred by RVMC on behalf of the Fund.

43.     Defendants again changed the fee structure when forming the 2016 Fund. This Fund, however, did not front load the fees. Instead, the Fund was to pay annually 2.5% of each investor's committed capital to RVMC, totaling 25% over the 10-year life of the Fund. The collected fees for management and administrative expenses were to be used by RVMC to cover most expenses incurred on behalf of the Fund, with certain exceptions similar to those outlined above for the 2015 Fund.

44.     Defendants took money from the Funds in excess of what was permitted by the terms of the Funds' agreements. During 2015, Defendants began taking larger and larger amounts of excess RVMC fees. Throughout the year, Defendants continued to raise money from investors for the 2015 Fund, but never disclosed that they were misappropriating money from the 2015 Fund. By December

2015, RVMC's finance director calculated that Rothenberg caused RVMC to take more in fees from the 2015 Fund then RVMC would ever be able to earn in fees over the 10-year contractual lifetime of the Fund.

45. By April 2017, Rothenberg and RVMC had also reached this limit in the 2013 and 2014 Funds, withdrawing more from each of the Funds than they were entitled to earn in fees. While the precise amounts will be determined by evidentiary proof, based on accounting records obtained from RVMC, it is estimated that Defendants took over $7 million cumulative from the 2013, 2014, and 2015 Funds than what RVMC was entitled to earn in fees.

46. Rothenberg frequently commingled the money he took from the RVMC-managed funds, channeling it through various entities and bank accounts, including Rothenberg's personal accounts. Contemporaneous internal RVMC emails show that Rothenberg knew that he was taking more money from the Funds than RVMC was entitled to earn.

47. Since April 2017, Defendants have continued to take money from certain Rothenberg Funds in excess of what they are entitled to earn in fees under each of the Fund's respective agreements.

**D.    Defendants Misappropriated Over One Million Dollars Intended for the Co-Fund**

48. In the first half of 2016, Rothenberg and RVMC sought to invest in a privately held technology company ("Private Company") by purchasing its common shares.

49. In early July 2016, Defendants agreed to tentative terms with Private Company on a proposed purchase of common shares and Private Company agreed to begin drafting a secondary stock purchase agreement for RVMC's review. The tentative deal required RVMC, through an investment vehicle of Defendants' creation, to purchase approximately $14 million worth of Private Company's shares.

50. Defendants represented to prospective investors that they intended to fund the proposed deal through a pooled investment fund, the Co-Fund, which was to invest in a special purpose vehicle that would purchase the Private Company shares. At Rothenberg's direction, in early July 2016, RVMC created marketing materials for the Co-Fund, which Rothenberg reviewed and revised. In those materials, RVMC was identified as the manager of the Co-Fund.

51. Several RVMC employees began marketing the opportunity to invest in the Co-Fund.

As instructed by Rothenberg, these employees impressed upon the prospective investors that time was of the essence in order to participate in the Co-Fund. Rothenberg suggested to these employees that any prospective investor that wanted to participate in the Co-Fund immediately wire their money to a bank account RVMC established for the purported purpose of capitalizing the Co-Fund.

52. On or about Thursday, July 13, 2016, a RVMC employee reached out to an existing investor group in the 2015 Fund (the "Co-Fund Investor") to solicit its investment in the Co-Fund. On or about July 14, the RVMC employee relayed Rothenberg's request that any prospective investor in the Co-Fund immediately wire their investment into the bank account RVMC purportedly opened for the Fund and suggested that the Co-Fund Investor wire its capital that same evening.

53. That same Thursday evening, Rothenberg emailed the Co-Fund Investor directly to highlight the investment opportunity presented by the Co-Fund. Rothenberg stated that the Co-Fund Investor could secure its spot "if we receive your wire in our account before the weekend." Less than an hour later, the Co-Fund Investor agreed to invest $1 million in the Co-Fund and stated it would wire the money the following morning.

54. The next morning, Friday, July 15, 2016, the Co-Fund Investor wired $1 million to the bank account RVMC identified for investing in the Co-Fund (the "Co-Fund Account"). The Co-Fund Investor emailed Rothenberg and the RVMC employee to confirm receipt of the wire. Rothenberg responded personally and confirmed receipt of the wire from the Co-Fund Investor.

55. That very same day, Defendants misappropriated the money by transferring the Co-Fund Investor's $1 million from the Co-Fund Account to RVMC's bank account. From there, and on the same day, Defendants funneled $450,000 to the 2016 Fund, $50,000 to River Studios, and over $80,000 to two other entities controlled by Rothenberg. None of these transfers involved an investment in Private Company.

56. Between July 14 and August 1, 2016, RVMC raised another $350,000 from investors in the Co-Fund, bringing the total amount raised to $1.35 million. At the same time RVMC was raising this money, Defendants misappropriated all of the investment capital raised for the Co-Fund. On July 21, Rothenberg directed the transfer of $200,000 to his personal bank account, and by July 25, he had directed the transfer of over $500,000 dollars to the account of a limited liability company believed to be

1  Rothenberg's personal entity.  By August 1, all of the $1.35 million raised for the Co-Fund had been
2  misappropriated by Defendants.

3        57.     Meanwhile, RVMC continued negotiating with Private Company.  Rothenberg failed to
4  tell the Co-Fund Investor and other Co-Fund investors that the proposed agreement with Private
5  Company had not yet been consummated.

6        58.     On or about August 3, 2016, RVMC informed the Co-Fund Investor only that it
7  "expect[ed] the deal to close soon."

8        59.     On or about August 18, 2016, the Co-Fund Investor requested that Defendants return its
9  $1 million provided for investment in the Co-Fund over one month prior.  At the time, the Co-Fund
10 Investor stated that it was still interested in investing in the Co-Fund, but it would keep the money until
11 Defendants confirmed that the proposed transaction with Private Company had closed.

12       60.     On or about August 21, 2016, Rothenberg told the Co-Fund Investor that its capital had
13 been invested in the 2016 Fund, falsely claiming that was what the Co-Fund Investor purportedly
14 intended all along.

15       61.     The following day, on or about August 22, 2016, the Co-Fund Investor demanded the
16 immediate return of its $1 million, and Rothenberg personally acknowledged receipt of its demand.  The
17 Co-Fund Investor reiterated its demand on or about August 24.

18       62.     In the ensuing weeks, other investors that provided capital to RVMC for the purpose of
19 investing in the Co-Fund demanded the return of their money.

20       63.     Defendants failed to return the Co-Fund Investor's $1 million for nearly one year even
21 though on or about August 30, 2016, Private Company told Rothenberg it was no longer interested in an
22 investment deal with Defendants.  Eventually, on or about August 31, 2017, Rothenberg caused RVMC
23 to wire $1 million to the Co-Fund Investor.

24       64.     Defendants misappropriated the $1 million used to repay the Co-Fund Investor from the
25 2013 and 2015 Funds.  Specifically, the source of the $1 million was from the liquidation of assets held
26 by the 2013 and 2015 Funds.  Defendants improperly used this money instead of either using the assets
27 for the benefit of the 2013 or 2015 Funds or making distributions to the 2013 and 2015 Funds' investors,
28 as the Funds' investment agreements provided.

### E. Rothenberg Used Misappropriated Funds to Finance River Studios, the River Brand, and His Lifestyle

65. As set forth above in Paragraphs 37 to 47, based on accounting records obtained from RVMC, it is estimated that by April 2017, Defendants took excess management fees of $7 million from the 2013, 2014, and 2015 Funds. Rothenberg used the excess management fees to support his River brand entities, primarily River Studios, and to support his very public lifestyle.

66. Beginning in April 2015, Rothenberg began using money misappropriated from three of the Rothenberg Funds to pay expenses for River Studios. The money came primarily from the 2015 Fund, but by the end of 2015, Rothenberg was also taking money from the 2013 and 2014 Funds to cover both River Studios' and RVMC's growing expenses.

67. Consistent with River Studios being Rothenberg's wholly owned company, Rothenberg represented to prospective investors in River Studios that the company was his—saying it was "self-funded." At the same time, however, Defendants were improperly taking money from the Funds to finance River Studios' operations.

68. In 2016, Rothenberg continued to funnel cash from the Rothenberg Funds into River Studios. Throughout 2016, Defendants continued to raise money from investors for the 2016 Fund, which was contractually obligated to invest in the 2015 Fund, but Defendants never disclosed that they were improperly taking 2015 Fund money.

69. In addition to taking money from the Rothenberg Funds for River Studios, Rothenberg misappropriated money from the Funds for his other commercial endeavors and the River brand. He sent money to numerous entities he owned and operated, including financing a car racing team. These were not expenses or investments authorized by the Funds and Rothenberg never disclosed these transactions to the Funds' investors.

70. As discussed above, Rothenberg also took cash from the Funds to pay for RVMC expenses and his personal expenses. Even after Rothenberg became aware of the Commission's investigation, he continued taking Fund money to pay off his legal bills and personal credit cards.

71. In a purported effort to raise the profile of his River brand, Rothenberg caused his entities—which were funded in part with money misappropriated from the RVMC-managed venture capital funds—to spend hundreds of thousands of dollars on sporting events and other entertainment,

including (i) leasing a suite at the home arena of the Golden State Warriors for multiple seasons; (ii) leasing a suite at Super Bowl 50; (iii) leasing the home stadium of the San Francisco Giants for "Founders Field Days;" (iv) financing a racing car and crew; and (v) throwing private parties and events at high-end resorts. Rothenberg comingled and funneled cash through a network of bank accounts and entities to pay these expenses, with most of the cash coming from the Rothenberg Funds, much of which Defendants had misappropriated under the guise of management fees, administrative expenses, advances, and so-called "carry fees" purportedly due to RVMC.

### F.   Defendants Have Engaged in Deceptive Acts To Hide Their Misappropriation

72.   Throughout 2015 and continuing through December 2017 (and possibly later), in furtherance of their scheme to defraud investors in the Funds, Defendants have engaged in numerous deceptive acts to hide their misappropriation from the Funds' investors. These deceptive acts included, among others, (i) improperly using cash from the 2015 Fund so RVMC could secure a line of credit from a bank, and then using the proceeds from the line of credit to mask the 2015 Fund's "overpayment" of fees; (ii) entering into self-dealing transactions in which the Rothenberg Funds purportedly purchased securities from RVMC under terms set by Rothenberg; (iii) misappropriating cash received from the sales of Fund investments to pay for Defendants' expenses and hide the overpayment of fees (one example above set forth above in paragraph 64); and (iv) falsely claiming that portions of the misappropriated money were investments in River Studios.

73.   The deceptive acts regarding the line of credit with the bank began in December 2015 when Rothenberg entered into negotiations with a bank for RVMC to obtain a line of credit using $4.25 million as collateral. Rothenberg represented to the bank that the $4.25 million was cash that RVMC was entitled to earn as management fees. Once the parties reached agreement on the terms for the line of credit, on or about December 29, 2015, referencing the bank account numbers, the bank requested that Rothenberg approve the transfer of $4.25 million from the 2015 Fund's bank account to RVMC's bank account. That same day, Rothenberg approved in writing the requested transfer and the next day, he acknowledged to the bank that the transfer had occurred. The $4.25 million was subsequently moved into a collateral account.

74.   At the end of December 2015, the bank provided RVMC with a $4 million line of credit.

RVMC immediately drew down the entire $4 million line of credit and transferred the proceeds to the 2015 Fund's bank account. Rothenberg's actions, timed to the 2015 Fund's fiscal year-end, created the illusion that Rothenberg was returning excess fees that RVMC had taken during 2015.

75. The primary deceptive acts regarding the above-referenced self-dealing transactions involve certain Rothenberg Funds purportedly purchasing securities from RVMC. Defendants used these self-dealing transactions to mask the overpayment of fees and Defendants' use of the Funds' money to finance Rothenberg's personal business ventures.

76. These self-dealing transactions primarily involved the River Accelerator. In particular, in exchange for the River Accelerator providing early-stage startups with resources, the startups agreed to provide warrants to "Rothenberg Ventures." As discussed above, Rothenberg executed these agreements on behalf of "Rothenberg Ventures," usually defined in the agreements as RVMC, RVMC's managers (which would include Rothenberg personally), any fund RVMC managed, or any investor approved by "Rothenberg Ventures" and the startup. While "Rothenberg Ventures" entered into agreements with the startups in exchange for warrants, Defendants later sold these warrants to the 2015 Fund (and possibly the 2016 Fund) to justify their earlier misappropriation.

77. For example, throughout the first quarter of 2016, Defendants took over $1.4 million from the 2015 Fund in a series of transfers, which at the time, were not recorded as investments. According to a May 2015 agreement RVMC provided to the Commission, the 2015 Fund agreed to advance money to RVMC at no cost in order for RVMC to purchase warrants in unspecified companies at a later date. The terms of this agreement, which was executed by Rothenberg on behalf of both RVMC and the 2015 Fund, were not disclosed to the investors of the 2015 Fund.

78. RVMC provided to the Commission, but not the 2015 Fund's investors, purchase and sale agreements between the 2015 Fund and RVMC. Each of these agreements are dated December 31, 2016, and purport to reflect the 2015 Fund's purchase of warrants in specific River Accelerator startups from RVMC. The agreements are incomplete and reference valuation schedules that are not included and do not appear to exist. The purchase amounts match dollar amounts Defendants previously misappropriated from the 2015 Fund and used for their benefit. Rothenberg executed the purchase and sale agreements on behalf of both RVMC and the 2015 Fund.

79. Defendants did not disclose the terms of these purported transactions to investors (or those of similar warrant transactions purportedly made between RVMC and the 2016 Fund) even though in October 2017, certain investors in each of the Rothenberg Funds demanded that RVMC provide them access to such documents, invoking their contractual rights and those provided them under applicable state law.

80. In July 2016, Rothenberg was notified of the Commission's investigation. After press reports regarding the Commission's investigation, Rothenberg emailed the Rothenberg Funds' investors on or about August 21, 2016, and represented that "$5m[illion] over 2 years has been invested in River Studios" by the Rothenberg Funds. Rothenberg did not identify which of the Funds made the purported investments or how much each of them purportedly invested in River Studios. Rothenberg's representation that the Rothenberg Funds had invested $5 million in River Studios over two years was false as it was contrary to Defendants' past conduct, including (i) RVMC's contemporaneous accounting records, (ii) Rothenberg's prior representations to investors that Rothenberg wholly-owned River Studios, and (iii) annual reports Defendants previously provided to the Funds' investors, which did not identify any investment in River Studios. Had the Funds invested $5 million in River Studios as Defendants claimed, it would have, by many orders of magnitude, represented the single largest investment by any of the Rothenberg Funds.

## FIRST CLAIM FOR RELIEF

*Violations of Sections 206(1) and 206(2) of the Advisers Act*

*by Rothenberg and RVMC*

81. The Commission repeats and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82. Defendants at all relevant times were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

83. Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly have (a) with scienter, employed devices, schemes, and artifices to defraud any client or prospective client; and (b) engaged in transactions, acts, practices and courses of business which operated as a fraud or deceit upon any client or prospective client.

84. As investment advisers to the Rothenberg Funds and the Co-Fund, Defendants owed the Funds fiduciary duties of utmost good faith, loyalty, and care to make full and fair disclosure to them of all material facts concerning the Funds, including any conflicts or potential conflicts of interests, as well as the duty to act in the Funds' best interests, and not to act in Defendants' own interests to the detriment of the Funds.

85. Defendants breached their fiduciary duties to the Rothenberg Funds and the Co-Fund, engaged in fraudulent conduct, and engaged in a scheme to violate Sections 206(1) and 206(2) of the Advisers Act.

86. By reason of the foregoing, the Defendants subject to this count directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**SECOND CLAIM FOR RELIEF**

*Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder*

*by Rothenberg and RVMC*

87. The Commission repeats and incorporates by reference Paragraphs 1 through 80 of this Complaint as if fully set forth herein.

88. Defendants at all relevant times were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

89. Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative. Defendants made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a RVMC-managed fund, and otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a RVMC-managed fund.

90. By reason of the foregoing, the Defendants subject to this count directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court find the Defendants committed the violations alleged, and:

## I.

Enter an order enjoining all Defendants permanently from directly or indirectly violating Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2), and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## II.

Enter an order requiring Defendants to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon.

## III.

Enter an order requiring Defendants to pay civil penalties pursuant to Sections 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: August 20, 2018          Respectfully submitted,


                                _____
                                ERIC M. BROOKS
                                Attorney for Plaintiff
                                SECURITIES AND EXCHANGE COMMISSION