United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

MICHAEL B. ROTHENBERG, et al.,

Defendants.

Case No. 18-cv-05080-JST

**ORDER GRANTING MOTION FOR APPROVAL OF CONSENT JUDGMENTS**

Re: ECF No. 16

Before the Court is a joint motion for approval of consent judgments filed by the Securities and Exchange Commission ("SEC") and Defendants Michael B. Rothenberg and Rothenberg Ventures LLC ("RVMC"). ECF No. 16. The Court will grant the motion.

## I. BACKGROUND

### A. SEC's Complaint

On August 20, 2018, the SEC filed a complaint alleging that Defendants defrauded the venture capital funds that they manage and the funds' investors, in violation of various provisions of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-6(1), (2), and (4), and SEC Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8. *See* ECF No. 1 ¶¶ 6-7.

As alleged in the complaint, Michael Rothenberg managed, owned, and operated RVMC, which served as an investment advisor to a series of venture capital funds (the 2013, 2014, 2015, and 2016 Rothenberg Venture Funds, or collectively, the "Funds"). *Id.* ¶¶ 12-20. Rothenberg also initiated a series of business ventures under the umbrella of the "River" brand, including a car racing team and an online store. *Id.* ¶¶ 28-29. Though Defendants marketed the River brand to potential venture capital fund investors "as a vehicle that would benefit them by creating synergies between technology startups, entrepreneurs, and investors," Defendants did not adequately

disclose that the Funds would invest in the River brand companies themselves. *Id.* ¶¶ 32-33. When the River brand companies began to lose money, Defendants continued to improperly funnel money from the Funds into Rothenberg's personal ventures. *Id.* ¶¶ 35-36.

In 2016, Defendants developed a proposed pooled investment fund, the Co-Fund, to invest in a privately held technology company by purchasing its common shares. *Id.* ¶¶ 48-52. Pursuant to Defendants' marketing of the Co-Fund, they received $1.35 million in investments intended for the Co-Fund, which they promptly funneled into RVMC accounts, Rothenberg's personal ventures, and Rothenberg's personal bank account. *Id.* ¶¶ 53-56. When Defendants ultimately had to repay $1 million to a Co-Fund investor, they did so by liquidating assets of the 2013 and 2015 Funds and misappropriating the profits. *Id.* ¶¶ 59-64.

During this period, Defendants also misappropriated money from the Funds by knowingly withdrawing at least $7 million more in fees than was authorized by their agreements with investors. *Id.* ¶¶ 44-47, 65. Rothenberg used this money to pay expenses for River brand companies and his personal expenses, including legal bills in this enforcement action and his personal credit cards. *Id.* ¶¶ 65-71.

Defendants further engaged in a series of deceptive and self-dealing transactions to conceal all of the above misconduct. *Id.* ¶¶ 72-80.

**B.  Proposed Settlement**

Rothenberg and RVMC have agreed to settle the SEC's charges and consented to the entry of proposed consent judgments. *See* ECF Nos. 5, 6. Defendants neither admit nor deny the complaint's allegations, except for the specific purposes provided for in the judgments. ECF No. 5 ¶ 2; ECF No. 6 ¶ 2.

The proposed consent judgments permanently enjoin Defendants from violating the provisions of the Advisors Act and the SEC Rule from which the SEC's charges arise. ECF No. 5-1 at 2; ECF No. 6-1 at 2. The judgments further provide that Defendants will pay disgorgement and civil monetary penalties in an amount to be determined by the Court upon further motion by the SEC. ECF No. 5-1 at 3; ECF No. 6-1 at 3. Finally, Rothenberg has consented to a separate Administrative Proceeding to be brought by the SEC, in which Rothenberg will not dispute that he

2

violated the Advisers Act and where the allegations of the complaint shall be deemed true. ECF No. 5 ¶¶ 3-4. That proceeding will result in Rothenberg being barred from association with an investment advisor role, as well as various other industry roles, with the right to apply to the SEC for reentry after five years. *Id.* ¶ 3.

## II. JURISDICTION

The Court has jurisdiction over the SEC's civil complaint against Defendants pursuant to 28 U.S.C. § 1391 and 15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14.

## III. LEGAL STANDARD

The Ninth Circuit has instructed that "[u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984). A court "need not require that the decree be 'in the public's *best* interest' if it is otherwise reasonable." *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (quoting *Randolph*, 736 F.2d at 529). In particular, the public policy favoring settlement is "strengthened when a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement.'" *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995) (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

To determine that a consent decree meets the "fair, adequate and reasonable" standard, courts consider first the procedural fairness, and then the substantive fairness. *See United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014). But if "the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid." *Oregon*, 913 F.2d at 581.

## IV. DISCUSSION

Here, the Court is satisfied that the consent judgments were procured through "good faith, arms-length negotiations." *Oregon*, 913 F.2d at 581. Defendants are sophisticated entities represented by counsel, and the parties report that they engaged in extensive settlement negotiations prior to reaching these agreements. ECF No. 16 at 2. Accordingly, the Court finds no procedural unfairness.

3

The Court also finds that the terms of the consent judgments are fair, reasonable, and adequate. The SEC will obtain its chief civil remedy, a permanent injunction against Defendants that prohibits future violations of the relevant statutory provisions. *See Sec. & Exch. Comm'n v. Murray*, No. 12-CV-01288-EMC, 2016 WL 6893880, at *7 (N.D. Cal. Nov. 23, 2016) ("[I]njunctions are 'the primary civil remedy available to the SEC' for securities violations." (quoting *Randolph*, 736 F.2d at 529)).

Moreover, the SEC will be able to seek disgorgement and civil penalties without having to prove liability, thereby conserving public resources. Civil penalties serve both punitive and deterrence goals. *See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81-82 (2d. Cir. 2006). Likewise, "[d]isgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998).

Finally, Rothenberg's consent judgment will facilitate an Administrative Proceeding wherein he will be barred from investment advisor and similar roles for at least five years, further deterring future violations. *See* ECF No. 5 ¶¶ 3-4.[1]

For similar reasons, the Court finds that the consent judgments are in the public interest, particularly given the deference owed to the SEC's judgment on the matter. *Randolph*, 736 F.2d at 529. The SEC has secured injunctive and monetary relief, and the penalties paid by Defendants will be redistributed to the injured investors. *See* ECF No. 5 ¶ 6; ECF No. 6 ¶ 4. The public will also benefit from achieving this result without the time and expense of a trial on liability.

\ \ \

\ \ \

\ \ \

---

[1] Pursuant to the SEC's regulations, *see* 17 C.F.R. § 202.5(e), Defendants neither admit nor deny the truth of the complaint's allegations, but agree that the allegations shall be deemed true for the specific purpose of determining disgorgement and civil penalties, as well as the administrative proceeding against Rothenberg. ECF No. 5 ¶¶ 2, 4, 5; ECF No. 6 ¶¶ 2-3. "The decision to require an admission of liability before entering into a consent decree rests squarely with the S.E.C." *U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 293 (2d Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Court grants the parties' joint motion to approve the proposed consent judgments.

**IT IS SO ORDERED.**

Dated: October 16, 2018



_____
JON S. TIGAR
United States District Judge