# EXHIBIT 1

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:            )
                             ) File No. SF-04094-A
ROTHENBERG VENTURES          )
MANAGEMENT                   )

WITNESS:   Michael Rothenberg
PAGES:     1 through 41
PLACE:     Securities and Exchange Commission
           44 Montgomery, Suite 2800
           San Francisco, California 94104
DATE:      Monday, June 12, 2017

    The above-entitled matter came on for hearing, pursuant to notice, at 9:38 a.m.

Diversified Reporting Services, Inc.
(202) 467-9200

Page 2

1     APPEARANCES:
2
3     On behalf of the Securities and Exchange Commission:
4        ERIC BROOKS, ESQ.
5        Division of Enforcement
6        Securities and Exchange Commission
7        44 Montgomery Street
8        San Francisco, California  94104
9
10    On behalf of the Witness:
11       MIRANDA KANE, ESQ.
12       JULIA BREYER, ESQ.
13       Kane & Kimball, LLP
14       803 Hearst Avenue
15       Berkeley, California  94710

Page 4

1           PROCEEDINGS
2           MR BROOKS:  We're on the record at 9:38 a m
3    on June 12th, 2017   I will now place the witness under
4    oath
5    Whereupon,
6           MICHAEL ROTHENBERG
7    was called as a witness and, having been first duly
8    sworn, was examined and testified as follows:
9               EXAMINATION
10      BY MR BROOKS:
11      Q   Would you please state your full name and spell
12   it for the record?
13      A   Michael Brent Rothenberg, M-i-c-h-a-e-k
14   B-r-e-n-t R-o-t-h-e-n-b-e-r-g
15      Q   Thank you.  My name is Eric Brooks.  I'm with
16   the Enforcement Division in the San Francisco Regional
17   Office of the United States Securities and Exchange
18   Commission.  Joining me later during testimony will be
19   Barrett Catwood, also with the SEC San Francisco Regional
20   Office.
21          We are officers of the Commission for the
22   purpose of this proceeding.
23          This is an investigation by the United States
24   Securities and Exchange Commission in the matter of
25   Rothenberg Ventures Management Company, File No. SF-4094,

Page 3

1             CONTENTS
2
3    WITNESS:                    EXAMINATION
4    Michael Rothenberg              4
5
6    EXHIBITS:  DESCRIPTION          IDENTIFIED
7    1   A copy of the Form 1662           5
8    2   A subpoena to the witness         6
9    3   A copy of the subpoena duces tecum for the
10       witness                           7
11   4   An email from Lynne McMillan on Thursday,
12       December 17th, 2015, to Mike Rothenberg    21
13   5   A series of emails with a cumulative email
14       from Lawrence Weisman to Mike Rothenberg on
15       Wednesday, February 24th, 2016            25
16   6   A series of emails culminating in an email
17       from Mike Rothenberg to Darren Woo, copying
18       Brandon Farwell and Henry Pfirmann, dated
19       July 9th, 2015                            27
20   7   A series of emails, culminating in an email
21       from David Herzog on Friday, April lst, 2016,
22       to Mike Rothenberg, copying Yulia Petrovskaya
23       and Jeff Belingheri                       29
24   8   The 2015 annual report for the 2015 Fund,
25       dated March 31st, 2016                    32

Page 5

1    to determine whether there have been violations of
2    certain provisions of the federal securities laws.
3    However, the facts developed in this investigation might
4    constitute violations of other federal or state, civil or
5    criminal laws.
6           Mr. Rothenberg, before we went on the record, I
7    provided you with a copy of the Formal Order of
8    Investigation in this matter.  It will be available for
9    your examination during the course of this proceeding.
10          Have you had an opportunity to review the
11   Formal Order?
12      A   I have.
13      Q   Do you have any questions regarding the Formal
14   Order?
15      A   I do not.
16      Q   Before going on the record I also provided you
17   with a copy of the Commission's Supplemental Information
18   Form 1662.  This form has been marked as Exhibit 1.
19           (SEC Exhibit No. 1 was marked
20             for identification.)
21      BY MR. BROOKS:
22      Q   Please take a moment to familiarize yourself
23   with Exhibit 1.  Have you had an opportunity to review
24   Exhibit 1?
25      A   I have.

```
                                              Page 6
 1    Q   Do you have any questions regarding Exhibit 1?
 2    A   I do not.
 3    Q   Okay. Are you represented by counsel here
 4  today?
 5    A   I am.
 6        MR. BROOKS: Okay. Would counsel please
 7  identify themselves?
 8        MS. KANE: Miranda Kane, M-i-r-a-n-d-a K-a-n-e.
 9        MS. BREYER: Julia Breyer, J-u-l-i-a
10  B-r-e-y-e-r.
11        MR. BROOKS: And are you representing Mr.
12  Rothenberg as his counsel today?
13        MS. KANE: I am.
14        MS. BREYER: I am, too.
15        BY MR. BROOKS:
16    Q   Okay. Mr. Rothenberg, are you appearing here
17  today pursuant to a subpoena?
18    A   Yes.
19             (SEC Exhibit No. 2 was marked
20              for identification.)
21        BY MR. BROOKS:
22    Q   A copy of the subpoena has been marked as
23  Exhibit 2. Is this a copy of the subpoena you are
24  appearing pursuant to here today?
25    A   Yes.
```

```
                                              Page 7
 1             (SEC Exhibit No. 3 was marked
 2              for identification.)
 3        BY MR. BROOKS:
 4    Q   Mr. Rothenberg, a copy of the subpoena duces
 5  tecum sent to you has been marked as Exhibit 3. It calls
 6  for the production of certain documents. Have you
 7  tendered to the staff all of the documents called for by
 8  the subpoena?
 9    A   We've made our best effort.
10    Q   All right. So, the court reporter is
11  transcribing -- or will transcribe -- everything that we
12  say today, so it's important that we talk one at a time.
13  So, please wait until I finish a question before
14  answering. Do you understand that?
15    A   I do.
16    Q   Okay. And, also, while you're welcome to nod
17  or shake your head in response. I also need an audible
18  response from you, otherwise it won't get picked up by
19  the court reporter. Okay?
20    A   Okay.
21    Q   All right. The oath that you took has the same
22  effect as if you were testifying in court and carries the
23  same penalty for perjury. It is a crime to knowingly
24  present false information during the course of this
25  investigation. Do you understand this?
```

```
                                              Page 8
 1    A   I do.
 2    Q   If there's anything you do not understand,
 3  please let me know and I can repeat or rephrase a
 4  question. Otherwise, I'm going to assume you understood
 5  the question asked. Okay?
 6    A   Okay.
 7    Q   The staff controls the record and the reporter
 8  here will only go off the record at our request. If you
 9  need to take a break, please let me know. However, we
10  will not break during a pending question.
11    A   Okay.
12    Q   Is there any reason today that you can't give
13  full, complete, and truthful testimony today?
14    A   No.
15    Q   You'll have an opportunity to clarify any part
16  of your testimony at the end of your testimony, as well
17  as your counsel will be provided the opportunity to ask
18  you any clarifying questions at the end of the testimony.
19  Okay?
20    A   Okay.
21    Q   Excluding conversation with counsel, have you
22  spoken about your testimony here today with anyone?
23    A   Spoken about it?
24    Q   Right.
25    A   Could you --
```

```
                                              Page 9
 1    Q   Substantive discussion about what you'll be
 2  testifying about here today?
 3    A   No, I haven't.
 4    Q   Okay. Have you talked with anybody just about
 5  the fact that you'll be here?
 6    A   Yes, I have.
 7    Q   Okay. Other than counsel, who have you
 8  informed that you'll be here today?
 9    A   Nick Canasax, Jimmy Ku -- those are executives
10  at the River Eco System. Martin Mao, he's not my
11  personal counsel, but he's the General Counsel of
12  Rothenberg Ventures. He's aware. I may have told my
13  parents, I don't remember. Their names are Rob and
14  Trisha Rothenberg. I told them sometimes my meetings.
15    Q   Anybody else?
16    A   I may have told Danny -- Danielle Hake. Sorry?
17    Q   I guess, with regard to these individuals, to
18  the degree you think the name might be difficult for the
19  court reporter, could you please spell them for us?
20    A   Well, Danielle is spelled D-a-n-i-e-l-l-e.
21  That's all I can remember -- oh, sorry, Hake is H-a-k-e.
22    Q   Okay. And Ku?
23    A   Yes, K-u.
24    Q   And there was a name before that, as well?
25    A   Nick Canasax, I think probably his legal name
```

Page 10

1  is Nicholas, N-i-c-h-o-l-a-s.  And his last name is
2  C-a-n-a-s-a-x.
3      Q   Okay.  And with regards to all of these
4  individuals, I think as you previously said, you did not
5  discuss the substance of your testimony?
6      A   I did not.
7      Q   Did you do anything to prepare for your
8  testimony here today?
9      A   Well, yes, I spoke to counsel.
10     Q   Okay.  For how long did you meet with counsel
11 in preparation for your testimony today?
12     A   We met or discussed this more than once and I
13 didn't count the hours.
14     Q   Now, you said you met and spoke more than once,
15 was this in person always or over the phone?
16     A   We had an in-person meeting at your office and
17 one at mine.  We spoke on the phone probably once or
18 twice.  The cumulative number of hours was likely to be
19 five or six in discussion.  Plus, personally, I have
20 reviewed these documents before today and spent some time
21 on that, as well.
22     Q   Okay.  Mr. Rothenberg, what's your date of
23 birth?
24     A   [REDACTED] 1984.
25     Q   Have you gone by any names other than Michael

Page 11

1  Rothenberg?
2      A   I go by Mike Rothenberg.
3      Q   Anything else?
4      A   No.
5      Q   Are you currently employed?
6      A   Well, I spend a lot of time with Rothenberg
7  Management Company, managing that.  I don't have a
8  relationship where I am an employee somewhere where I'm
9  not the manager.
10     Q   Okay.  You said that you spend time managing
11 Rothenberg Ventures Management?
12     A   I do, yes.
13     Q   Okay.  What other entities do you manage?
14     A   Okay.  On the advice of counsel, I invoke my
15 Fifth Amendment right not to answer that question.
16     Q   I am not authorized to compel you to give
17 evidence or testimony as to which you assert your
18 privilege against self-incrimination and have no
19 intention of doing so.
20         In addition, I do not have the authority to
21 compel your testimony by granting you immunity from
22 prosecution.  Any question that I ask hereafter will be
23 with the understand that if you wish to assert your
24 privilege, you need merely state that you refuse to
25 answer on the grounds that your answer might incriminate

Page 12

1  you.  In other words, you are not compelled to answer any
2  further questions if you believe that a truthful answer
3  to the question might show that you committed a crime and
4  you wish to assert your privilege against
5  self-incrimination.
6          Accordingly, if you answer any questions you
7  will be doing so voluntarily.  Do you understand this?
8      A   Yes.
9      Q   You should be aware that if you refuse to
10 answer a question based on your Fifth Amendment
11 privilege, a judge or jury may take an adverse inference
12 against you in a civil action that the SEC may determine
13 to bring against you.
14         That means that the judge or jury would be
15 permitted to infer that your answer to the questions
16 might incriminate you.
17         Do you understand this?
18     A   I do.
19     Q   Okay.  Just so the record is clear, when you,
20 Mr. Rothenberg, refer to the Fifth Amendment, are you
21 referring to the privilege against self-incrimination
22 under the Fifth Amendment to the United States
23 Constitution?
24     A   I am.
25     Q   Okay.  As we go forward, instead of saying it

Page 13

1  more elaborately, Mr. Rothenberg cay say "Fifth
2  Amendment," as an indication that he's asserting his
3  Fifth Amendment right not to testify.  Agreed?
4      A   Agreed.
5      Q   Do you hold any professional licenses?
6      A   I have an MBA from Harvard Business School.  A
7  degree, not a license.
8      Q   Okay.  When did you receive that degree?
9      A   In 2013.
10     Q   And did you have a focus upon obtaining the
11 degree?
12     A   No, it's just an MBA.
13     Q   What email addresses have you used in the last
14 four years?
15     A   mike@rothenbergventures.com,
16 mikerothenberg@gmail.com, mike@riverecosystem.com,
17 mike@frontier.tec, mike@rosidios.com.  Some of those have
18 aliases.  A lot of times, mikerothenberg at the same
19 email address, the same email, but it would look like
20 that. mike@rothenberg.co, mike@stanfordalumni.org.
21 There's a business one that I can't remember.
22         MS. KANE:  We previously provided you with a
23 full list.  I didn't make Mr. Rothenberg memorize it, so
24 there's a lot of emails, as you are aware.
25         THE WITNESS:  The ones that I mentioned would

Page 14

1  be the vast majority, though.
2      BY MR. BROOKS:
3    Q  Okay.  And those are the ones that you recall
4  at this moment?
5    A  Yes, and the full list, I believe, has been
6  provided.
7    Q  Okay.  At what institutions to you hold bank
8  accounts?
9    A  Fifth Amendment.
10   Q  Do you have any foreign accounts?
11   A  Fifth Amendment.
12   Q  What is Rothenberg Ventures Fund 1, LLC?
13   A  Fifth Amendment.
14   Q  Is this fund also known as the Rothenberg
15 Ventures 2013 Fund?
16   A  Fifth Amendment.
17   Q  Is Rothenberg Ventures Fund 1, a limited
18 liability company, formed to invest primarily in equity
19 securities, including convertible debt securities of
20 privately-held companies?
21   A  Fifth Amendment.
22   Q  How many investors are there in Rothenberg
23 Ventures Fund 1?
24   A  Fifth Amendment.
25   Q  Who are the investors in Rothenberg Ventures

Page 15

1  Fund 1?
2    A  Fifth Amendment.
3    Q  How much money was raised from investors in
4  Rothenberg Ventures Fund 1?
5    A  Fifth Amendment.
6    Q  What companies make up the portfolio of
7  investments in Rothenberg Ventures Fund 1?
8    A  Fifth Amendment.
9    Q  What is the management fee structure for
10 Rothenberg Ventures Fund 1?
11   A  Fifth Amendment.
12   Q  Is it a up-front 17.75 percent of the total
13 amount of capital raised?
14   A  Fifth Amendment.
15   Q  If I ask you further questions regarding
16 Rothenberg Ventures Fund 1, will you continue to invoke
17 your Fifth Amendment privilege against
18 self-incrimination?
19   A  Yes.
20   Q  What is Rothenberg Ventures Fund 2?
21   A  Fifth Amendment.
22   Q  Is this fund also known as the Rothenberg
23 Ventures 2014 Fund?
24   A  Fifth Amendment.
25   Q  Is Rothenberg Ventures Fund 2 a limited

Page 16

1  liability company formed to invest primarily in equity
2  securities, including convertible debt securities of
3  privately-held companies?
4    A  Fifth Amendment.
5    Q  How many investors are there in Rothenberg
6  Ventures Fund 2?
7    A  Fifth Amendment.
8    Q  Who are the investors in Rothenberg Ventures
9  Fund 2?
10   A  Fifth Amendment.
11   Q  How much money was raised from investors in
12 Rothenberg Ventures Fund 2?
13   A  Fifth Amendment.
14   Q  What companies make up the portfolio of
15 investments in Rothenberg Ventures Fund 2?
16   A  Fifth Amendment.
17   Q  What is the management fee structure for
18 Rothenberg Ventures Fund 2?
19   A  Fifth Amendment.
20   Q  Is it two percent of members' capital
21 contribution per quarter for a period of two years and .5
22 percent of members' capital contribution for a period of
23 eight years?
24   A  Fifth Amendment.
25   Q  If I ask you further questions regarding

Page 17

1  Rothenberg Ventures Fund 2, will you continue to invoke
2  your Fifth Amendment privilege against
3  self-incrimination?
4    A  Yes.
5    Q  Okay.  What is Rothenberg Ventures 2015 Fund,
6  LLC?
7    A  Fifth Amendment.
8    Q  Is Rothenberg Ventures 2015 Fund a limited
9  liability company formed to invest primarily in equity
10 securities, including convertible debt securities of
11 privately-held companies?
12   A  Fifth Amendment.
13   Q  How many investors are there in Rothenberg
14 Ventures 2015 Fund?
15   A  Fifth Amendment.
16   Q  Who are the investors in Rothenberg Ventures
17 2015 Fund?
18   A  Fifth Amendment.
19   Q  How much money was raised from investors in
20 Rothenberg Ventures 2015 Fund?
21   A  Fifth Amendment.
22   Q  What companies make up the portfolio of
23 investments in Rothenberg Ventures 2015 Fund?
24   A  Fifth Amendment.
25   Q  What is the management fee and expense

Page 18

1  structure for Rothenberg Ventures 2015 Fund?
2      A  Fifth Amendment.
3      Q  Is it 3.5 percent of investors' capital
4  commitment each year for two years and zero percent for
5  the remaining eight years?
6      A  Fifth Amendment.
7      Q  Is it also a one percent administrative expense
8  per year for the initial 10-year term of the fund?
9      A  Fifth Amendment.
10     Q  If I ask you further questions regarding
11 Rothenberg Ventures 2015 Fund, will you continue to
12 invoke your Fifth Amendment privilege against
13 self-incrimination?
14     A  Yes.
15     Q  All right.  What is Rothenberg Ventures 2016
16 Fund, LP?
17     A  Fifth Amendment.
18     Q  Is Rothenberg Ventures 2016 Fund a limited
19 performance fund formed to invest primarily in equity
20 securities, including convertible debt securities of
21 privately-held companies?
22     A  Fifth Amendment.
23     Q  How many investors are there in Rothenberg
24 Ventures 2016 Fund?
25     A  Fifth Amendment.

Page 19

1      Q  Who are the investors in Rothenberg Ventures
2  2016 Fund?
3      A  Fifth Amendment.
4      Q  How much money was raised from investors in
5  Rothenberg Ventures 2016 Fund?
6      A  Fifth Amendment.
7      Q  What companies make up the portfolio of
8  investments in Rothenberg Ventures 2016 Fund?
9      A  Fifth Amendment.
10     Q  What is the management fee and expense
11 structure for Rothenberg Ventures 2016 Fund?
12     A  Fifth Amendment.
13     Q  Is it an annual two percent of investors'
14 capital commitment?
15     A  Fifth Amendment.
16     Q  Is it also an annual .5 percent administrative
17 expense?
18     A  Fifth Amendment.
19     Q  If I ask you further questions regarding
20 Rothenberg Ventures 2016 Fund, will you continue to
21 invoke your Fifth Amendment privilege against
22 self-incrimination?
23     A  Yes.
24     Q  What is Rothenberg Ventures Management Company,
25 LLC?

Page 20

1      A  Fifth Amendment.
2      Q  Are you the owner of Rothenberg Ventures
3  Management Company, LLC?
4      A  Fifth Amendment.
5      Q  As the owner of Rothenberg Ventures Management
6  Company, LLC, do you make all final decisions regarding
7  the strategy, investments and day-to-day operations of
8  the fund on behalf of Rothenberg Ventures Management
9  Company?
10     A  Fifth Amendment.
11     Q  Is Rothenberg Ventures Management Company the
12 investment advisor to Rothenberg Ventures Fund 1?
13     A  Fifth Amendment.
14     Q  Is Rothenberg Ventures Management Company a
15 fiduciary to Rothenberg Ventures Fund 1?
16     A  Fifth Amendment.
17     Q  Is Rothenberg Ventures Management Company the
18 investment advisor to Rothenberg Ventures Fund 2?
19     A  Fifth Amendment.
20     Q  Is Rothenberg Ventures Management Company a
21 fiduciary to Rothenberg Ventures Fund 2?
22     A  Fifth Amendment.
23     Q  Is Rothenberg Ventures Management Company the
24 investment advisor to Rothenberg Ventures 2015 Fund?
25     A  Fifth Amendment.

Page 21

1      Q  Is Rothenberg Ventures Management Company a
2  fiduciary to Rothenberg Ventures 2015 Fund?
3      A  Fifth Amendment
4      Q  Is Rothenberg Ventures Management Company the
5  investment advisor to Rothenberg Ventures 2016 Fund?
6      A  Fifth Amendment
7      Q  Is Rothenberg Ventures Management Company a
8  fiduciary to Rothenberg Ventures 2016 Fund?
9      A  Fifth Amendment
10     Q  If I ask you further questions regarding
11 Rothenberg Ventures Management Company, will you continue
12 to invoke your Fifth Amendment privilege against
13 self-incrimination?
14     A  Yes
15     Q  Okay.  For calendar year 2015, the Rothenberg
16 Ventures Management Company was allowed to take fees and
17 expenses totalling 13.5 percent of committed capital,
18 correct?
19     A  Fifth Amendment
20              (SEC Exhibit No  4 was marked
21               for identification )
22     BY MR BROOKS:
23     Q  Okay.  What I'm handing to you today what's
24 been marked as Exhibit 4.  It's an email from Lynne
25 McMillan on Thursday, December 17th, 2015, to Mike

Page 22

1 Rothenberg.
2     Please read it. And just let me know when you
3 are ready to proceed.
4   A  I'm good. I'm ready.
5   Q  Okay. Have you seen Exhibit 4 before?
6   A  Fifth Amendment.
7   Q  What is it?
8   A  Fifth Amendment.
9   Q  Are you the Mike Rothenberg listed in Exhibit
10 4?
11  A  Fifth Amendment.
12  Q  Who is Lynne McMillan?
13  A  Fifth Amendment.
14  Q  Was she the Director of Finance at Rothenberg
15 Ventures at the time of this email?
16  A  Fifth Amendment.
17  Q  As reflected in Exhibit 4, as of December 17,
18 2015, your Director of Finance calculated that the 2015
19 Fund had just over $13 million in committed capital,
20 correct?
21  A  Fifth Amendment.
22  Q  Thirteen point five percent of 13 million is
23 approximately 1.75 million, correct?
24  A  Fifth Amendment.
25  Q  But as reflected in Exhibit 4, your Director of

Page 23

1 Finance had calculated that you had taken more than $6 in
2 million as of December 17th, 2015, correct?
3   A  Fifth Amendment.
4   Q  Did you inform any investors that throughout
5 2015 you were taking fees in excess of the amount
6 permitted under the 2015 Fund's operating agreement?
7   A  Fifth Amendment.
8   Q  What did you do with the excessive fees taken
9 from the 2015 Fund?
10  A  Fifth Amendment.
11  Q  Did you use these excessive fees for personal
12 reasons?
13  A  Fifth Amendment.
14  Q  Were these excessive fees used to fund other
15 entities that were owned by you?
16  A  Fifth Amendment.
17  Q  At the end of 2015, you secured a $4.25 million
18 line of credit with Silicon Valley Bank, correct?
19  A  Fifth Amendment.
20  Q  The purpose of the line of credit was to cover
21 up these excessive fees in any year end reporting,
22 correct?
23  A  Fifth Amendment.
24  Q  You secured this line of credit with cash you
25 had recently received from investors, correct?

Page 24

1   A  Fifth Amendment.
2   Q  Included in that cash was a recent $3 million
3 investment from an investor called Archina, correct?
4   A  Fifth Amendment.
5   Q  You did not inform Archina before it invested
6 that its full $3 million investment would be used to
7 secure a line of credit to pay back excess management
8 fees that you took out of the 2015 Fund, did you?
9   A  Fifth Amendment.
10  Q  You did not inform Silicon Valley Bank that the
11 cash security was investor funds, did you?
12  A  Fifth Amendment.
13  Q  In fact, isn't it true that you told Silicon
14 Valley Bank that the cash security was early payments of
15 future management fees that you wanted to deposit in a
16 separate account?
17  A  Fifth Amendment.
18  Q  If I ask you further questions regarding
19 excessive fees, will you continue to invoke your Fifth
20 Amendment privilege against self-incrimination?
21  A  Yes.
22  Q  If I ask you further questions regarding the
23 line of credit from Silicon Valley Bank, will you
24 continue to invoke your Fifth Amendment privilege against
25 self-incrimination?

Page 25

1   A  Yes
2   Q  What is Bend Reality?
3   A  Fifth Amendment
4   Q  Does it also go by the name River Studios?
5   A  Fifth Amendment
6   Q  For the record, from this point forward, I will
7 use the name "River Studios" in describing Bend Reality.
8     Was River Studios formed for the purpose of
9 enhancing Rothenberg Ventures Management Company, LLC's
10 branding and positioning in the virtual reality sector?
11  A  Fifth Amendment
12  Q  Prior to August of 2016, did you tell people
13 that you funded River Studios?
14  A  Fifth Amendment
15  Q  Prior to August of 2016, did you tell people
16 that you were the sole owner of River Studios?
17  A  Fifth Amendment
18  Q  In February 2016, didn't you tell Dominic
19 Polizzotto and Lawrence Weisman of Pilot Grove that there
20 were no other investors besides you in River Studios?
21  A  Fifth Amendment
22          (SEC Exhibit No  5 was marked
23           for identification )
24  BY MR  BROOKS:
25  Q  All right. What I'm handing to you now has

Page 26

1  been marked as Exhibit 5. It's a series of emails with a
2  cumulative email from Lawrence Weisman to Mike Rothenberg
3  on Wednesday, February 24th, 2016. The subject line is:
4  River Studios Financials." Please take a moment to
5  review Exhibit 5.
6      Please let me know when you're ready to discuss
7  Exhibit 5.
8      A   Okay, ready
9      Q   Do you recognize Exhibit 5?
10     A   Fifth Amendment
11     Q   What is it?
12     A   Fifth Amendment
13     Q   Are you the Mike Rothenberg listed in the email
14  correspondence in Exhibit 5?
15     A   Fifth Amendment
16     Q   Who's Lawrence Weisman?
17     A   Fifth Amendment
18     Q   Does he work for Pilot Grove?
19     A   Fifth Amendment
20     Q   In these emails, don't you state that you
21  self-funded the company in 2015 and continue to do so?
22     A   Fifth Amendment
23     Q   Didn't you represent in a signed, convertible
24  promissory note dated February 24th, 2016, that you held
25  100 percent equity interest of River Studios?

Page 27

1      A   Fifth Amendment.
2          (SEC Exhibit No. 6 was marked
3           for identification.)
4      BY MR. BROOKS:
5      Q   I'm handing to you what's been marked as
6  Exhibit 6. It's a series of emails culminating in an
7  email from Mike Rothenberg to Darren Woo, copying Brandon
8  Farwell and Henry Pfirmann, dated July 9th, 2015.
9          Please review it and let me know when you're
10  ready to discuss it.
11     A   I'm ready.
12         MR. BROOKS: Is counsel ready?
13         MS. KANE: Yes, I'm ready.
14         BY MR. BROOKS:
15     Q   Okay. Do you recognize Exh bit 6?
16     A   Fifth Amendment.
17     Q   What is it?
18     A   Fifth Amendment.
19     Q   Are you the Mike Rothenberg listed in the email
20  correspondence listed in the email correspondence in
21  Exhibit 6?
22     A   Fifth Amendment.
23     Q   Who is Darren Woo?
24     A   Fifth Amendment.
25     Q   Who's Brandon Farwell?

Page 28

1      A   Fifth Amendment.
2      Q   Who's Henry Pfirmann?
3      A   Fifth Amendment.
4      Q   In response to a question in this email about
5  River Studios, do you state that River Studios is funded
6  independently?
7      A   Fifth Amendment.
8      Q   Prior to August of 2016, do you inform other
9  potential investors in Rothenberg Ventures 2015 and 2016
10  Funds that River Studios was funded independently?
11     A   Fifth Amendment.
12     Q   Isn't it true that you transferred money from
13  the 2015 and 2016 funds to pay for River Studios'
14  expenses?
15     A   Fifth Amendment.
16     Q   These transfers from the 2015 and 2016 Funds to
17  River Studios were not investments in River Studios, were
18  they?
19     A   Fifth Amendment.
20     Q   The 2015 and 2016 Funds got nothing in exchange
21  for these transfers, correct?
22     A   Fifth Amendment.
23     Q   You caused River Studios to just take the money
24  from the 2015 and 2016 Funds, correct?
25     A   Fifth Amendment.

Page 29

1          (SEC Exhibit No. 7 was marked
2           for identification.)
3      BY MR. BROOKS:
4      Q   Okay. What I'm handing to you now has been
5  marked as Exhibit 7. It's a series of emails,
6  culminating in an email from David Herzog on Friday,
7  April 1st, 2016, to Mike Rothenberg, copying Yulia
8  Petrovskaya and Jeff Belingheri.
9          MS. KANE: There's some concern about whether
10  or not this document is a privileged document, in that
11  Mr. Herzog represented Mr. Rothenberg as his counsel. So
12  we've talked about during the course of the production in
13  this matter, that we made every effort to screen for
14  privilege and -- but this may be a document that should
15  have been held back. The only question that I had is
16  what was the nature of Mr. Belingheri's work was and
17  whether or not they worked under privilege for Mr.
18  Herzog.
19         MR. BROOKS: I guess, to the degree, we can
20  have this discussion --
21         MS. KANE: I mean, he's not going to answer any
22  questions.
23         MR. BROOKS: The question is what are the roles
24  of Yulia and Jeff, that would be my first question, and
25  what's their association with Mr. Herzog or Mr.

8 (Pages 26 to 29)

Page 30

1  Rothenberg.
2      MS. KANE:  We can take it up at the recess.
3      MR. BROOKS:  Okay.  Okay.  If you'd like to
4  state a general objection to the document and the
5  questions related to the document for privilege grounds?
6      I guess, how do you want to proceed?
7      MS. KANE:  Yes.
8      MR. BROOKS:  How comfortable are you with
9  proceeding with questions to this document, or do you
10 want
11 to --
12     MS. KANE:  Under the circumstances, I
13 anticipate that my client will be asserting his Fifth
14 Amendment rights, in any event.  But I would like to
15 lodge an objection about this document until we confirm
16 whether or not it should be considered as privileged and
17 pull it back under our agreement about producing
18 privileged documents.
19     MR. BROOKS:  Okay.  I have no basis to object
20 to your stated objection, that's fine.  But if I could
21 forth and ask the question?
22     MS. KANE:  You may.
23     MR. BROOKS:  Okay.
24     BY MR. BROOKS:
25  Q   Okay.  All right.  Do you recognize Exhibit 7?

Page 31

1   A   Fifth Amendment
2   Q   What is it?
3   A   Fifth Amendment
4   Q   Are you the Mike Rothenberg listed in the email
5  correspondence, that's in Exhibit 7?
6   A   Fifth Amendment
7   Q   Who's David Herzog?
8   A   Fifth Amendment
9   Q   Who's Yulia Petrovskaya?
10  A   Fifth Amendment
11  Q   Who's Jeff Belingheri?
12  A   Fifth Amendment
13  Q   What is Rothenberg Group, LLC?
14  A   Fifth Amendment
15  Q   Were you the sole member of Rothenberg Group,
16 LLC, in 2015?
17  A   Fifth Amendment
18  Q   In 2016, were you a 99.9 percent member of
19 Rothenberg Group, LLC?
20  A   Fifth Amendment
21  Q   In Exhibit 7, you characterize the money you
22 transferred from Rothenberg Ventures Management Company,
23 LLC, as a loan to Rothenberg Group, LLC, correct?
24  A   Fifth Amendment
25  Q   The money in Rothenberg Ventures Management

Page 32

1  Company, LLC, came from investor funds, in particular
2  management fees and excess management fees from the 2015
3  Fund, isn't that correct?
4   A   Fifth Amendment.
5   Q   Also, in Exhibit 7, you characterize the money
6  transferred from Rothenberg Group, LLC, to River Studios
7  as a redeemable equity vehicle, correct?
8   A   Fifth Amendment.
9   Q   Isn't it true that as of April 1st, 2016, you
10 viewed yourself the only person or entity having an
11 equity interest in River Studios?
12  A   Fifth Amendment.
13  Q   These transfer of funds had no formal
14 documentation, correct?
15  A   Fifth Amendment.
16  Q   Prior to August of 2016, you did not intend for
17 the 2015 and 2016 Funds to be invested in River Studios?
18  A   Fifth Amendment.
19          (SEC Exhibit No. 8 was marked
20          for identification.)
21     BY MR. BROOKS:
22  Q   What I'm handing to you has been marked as
23 Exhibit 8.  It's the 2015 annual report for the 2015
24 Fund, dated March 31st, 2016.
25     Just let me know when you're ready to proceed.

Page 33

1   A   I'm ready.
2   Q   Do you recognize Exhibit 8?
3   A   Fifth Amendment.
4   Q   What is it?
5   A   Fifth Amendment.
6   Q   Was Exhibit 8 provided to the limited partners
7  in the 2015 Fund on or around March 31st, 2016?
8   A   Fifth Amendment.
9   Q   Does Exhibit 8 reflect all of the portfolio
10 companies with whom the fund was invested?
11  A   Fifth Amendment.
12  Q   In Exh bit 8, River Studios was not listed as
13 one of the portfolio companies, isn't that correct?
14  A   Fifth Amendment.
15  Q   In fact, in an August 13, 2016, email to Pilot
16 Grove, LLC, you admitted that prior to that time you
17 believed yourself to be the owner of River Studios,
18 didn't you?
19  A   Fifth Amendment.
20  Q   Is the reason you now claim to invest the 2015
21 and 2016 Funds into River Studios because you couldn't
22 pay back the money you took from the funds?
23  A   Fifth Amendment.
24  Q   If I ask you further questions regarding River
25 Studios, will you continue to invoke your Fifth Amendment

## Page 34

1  privilege against self-incrimination?
2      A   Yes.
3      Q   Do you know Unity Technologies?
4      A   Fifth Amendment.
5      Q   What is it?
6      A   Fifth Amendment.
7      Q   What does Unity do?
8      A   Fifth Amendment.
9      Q   Do you know anybody at Unity Technologies?
10     A   Fifth Amendment.
11     Q   Do you know John Riccitiello at Unity?
12     A   Fifth Amendment.
13     Q   Do you know Mike Foley at Unity?
14     A   Fifth Amendment.
15     Q   In May and June 2016, were you involved in
16  discussions with John Riccitiello and Mike Foley about
17  purchasing Unity common stock from John Riccitiello and
18  his wife?
19     A   Fifth Amendment.
20     Q   In July 2016, did you agree to purchase
21  approximately one million shares of Unity common stock at
22  $14 a share?
23     A   Fifth Amendment.
24     Q   On July 12, 2016, did you email Ron and Lena
25  Goldberg to offer them the opportunity to invest in Unity

## Page 35

1   Co. investment?
2      A   Fifth Amendment.
3      Q   On or about July 12, 2016, did you direct other
4   Rothenberg Ventures employees to solicit limited partners
5   in the Rothenberg Ventures' funds to invest in the Unity
6   Co. investment?
7      A   Fifth Amendment.
8      Q   On July 14th, 2016, did you email Theo
9   Melas-Kyriazi to encourage his family to invest in the
10  Unity Co. investment?
11     A   Fifth Amendment.
12     Q   In that email, did you claim that the Unity Co.
13  investment was, quote, "The most popular Co. investment
14  since Space X in 2012," end quote?
15     A   Fifth Amendment.
16     Q   On July 15th, 2016, did Theo Melas-Kyriazi wire
17  $1 million to the Rothenberg Ventures Co. Fund 1, LLC,
18  account at Silicon Valley Bank for the Unity Co.
19  investment?
20     A   Fifth Amendment.
21     Q   Was that $1 million the first money wired to
22  Rothenberg Ventures for the Unity Co. investment?
23     A   Fifth Amendment.
24     Q   This $1 million wire from Theo Melas-Kyriazi
25  was for the purpose of investing in the Unity Co.

## Page 36

1   investment, correct?
2      A   Fifth Amendment.
3      Q   Also, on July 15th, did you transfer the $1
4   million wire from Theo Melas-Kyriazi out of the
5   Rothenberg Ventures Co. Fund 1, LLC, fund to the
6   Rothenberg Ventures Management Company, LLC, account?
7      A   Fifth Amendment.
8      Q   Did you then use that money for purposes other
9   than the Unity Co. investment?
10     A   Fifth Amendment.
11     Q   In addition to the Melas-Kyriazi Unity Co.
12  investment, did at least four other investors wire a
13  total of $300,000 into the Rothenberg Ventures Co. Fund
14  1, LLC, account at Silicon Valley Bank for the Unity Co.
15  investment from July 18th, 2016, to July 21st, 2016?
16     A   Fifth Amendment.
17     Q   All of these wires into the Rothenberg Ventures
18  Co. Fund 1, LLC, account were for the purpose of
19  investing in the Unity Co. investment, correct?
20     A   Fifth Amendment.
21     Q   Did you also transfer those funds from the
22  Rothenberg Ventures Co. Fund 1, LLC, account to the
23  Rothenberg Ventures Management Company, LLC, account
24  within days of receiving the funds?
25     A   Fifth Amendment.

## Page 37

1      Q   Did you then use that money for purposes other
2   than the Unity Co. investment?
3      A   Fifth Amendment.
4      Q   Isn't it true that none of the investment money
5   I've described that was provided in connection with the
6   Unity Co. investment was ever provided by the investors
7   for purposes other than the Unity Co. investment?
8      A   Fifth Amendment.
9      Q   And you understood that the money was only for
10  the Unity Co. investment at the time that Rothenberg
11  Ventures employees, including yourself, solicited the
12  investments, correct?
13     A   Fifth Amendment.
14     Q   And you understood that the money was only for
15  the Unity Co. investment at the time the money was
16  received, correct?
17     A   Fifth Amendment.
18     Q   None of the money investors provided for the
19  Unity Co. investment was ever intended to be spent on
20  expenses of other entities you controlled, correct?
21     A   Fifth Amendment.
22     Q   And none of the money investors provided was to
23  be invested in the 2016 Fund, correct?
24     A   Fifth Amendment.
25     Q   On August 25th, 2016, you were informed by Mike

Page 38

1 Foley at Unity that Unity and Rothenberg Ventures should
2 part ways and not complete the Unity common stock sale,
3 correct?
4    A   Fifth Amendment.
5    Q   Once the possibility of the Unity Co.
6 investment ended, you did not immediately return the
7 investment money to the investors who had provided
8 investment money for the Unity Co. investment, did you?
9    A   Fifth Amendment.
10   Q   That's because you had already spent their
11 money, correct?
12   A   Fifth Amendment.
13   Q   To the degree you have repaid some of the Unity
14 Co. investment investors, you used money other than the
15 money of the Unity Co. investment investors, correct?
16   A   Fifth Amendment.
17   Q   You had not repaid the Melas-Kyriazis their $1
18 million Unity Co. investment, have you?
19   A   Fifth Amendment.
20   Q   If I ask you further questions regarding
21 Rothenberg Ventures Unity Co. investment, will you
22 continue to invoke your Fifth Amendment privilege against
23 self-incrimination?
24   A   Yes.
25      MR. BROOKS:  Okay.  Mr. Rothenberg, we have no

Page 39

1 further questions at this time.  We may, however, call
2 you again to testify in this investigation.  Should that
3 be necessary, we will contact your counsel.
4      We are off the record at 10:21 a.m.
5      (Whereupon, at 10:21 a.m., the examination was
6 concluded.)
7            * * * * *

Page 40

1              PROOFREADER'S CERTIFICATE
2
3 In The Matter of:  ROTHENBERG VENTURES MANAGEMENT
4 Witness:       Michael Rothenberg
5 File Number:   SF-04094-A
6 Date:          Monday, June 12, 2017
7 Location:      San Francisco, CA
8
9    This is to certify that I, Maria E Paulsen,
10 (the undersigned), do hereby swear and affirm that the
11 attached proceedings before the U S Securities and
12 Exchange Commission were held according to the record and
13 that this is the original, complete, true and accurate
14 transcript that has been compared to the reporting or
15 recording accomplished at the hearing
16
17 _____    _____
18 (Proofreader's Name)      (Date)

```
 1                  PROOFREADER'S CERTIFICATE
 2
 3  In The Matter of:   ROTHENBERG VENTURES MANAGEMENT
 4  WITNESS:            Michael Rothenberg
 5  File Number:        SF-04094-A
 6  Date:               Monday, June 12, 2017
 7  Location:           San Francisco, CA
 8
 9           This is to certify that I, Maria E. Paulsen,
10  (the undersigned), do hereby swear and affirm that the
11  attached proceedings before the U.S. Securities and
12  Exchange Commission were held according to the record and
13  that this is the original, complete, true and accurate
14  transcript that has been compared to the reporting or
15  recording accomplished at the hearing.
16
17   [signature]                        6/22/2017
18  (Proofreader's Name)                (Date)
19
20
21
22
23
24
25
```

```
 1                REPORTER'S CERTIFICATE
 2
 3  I, Damion Matthews, reporter, hereby certify that the
 4  foregoing transcript of 39 pages is a complete, true and
 5  accurate transcript of the testimony indicated, held on
 6  June 12, 2017 at San Francisco, CA in the matter of:
 7  ROTHENBERG VENTURES MANAGEMENT.
 8
 9  I further certify that this proceeding was recorded by
10  me, and that the foregoing transcript has been prepared
11  under my direction.
12
13
14                         Date: 6/22/2017
15        Official Reporter:  Damion Matthews
16        Diversified Reporting Services, Inc.
17
18
19
20
21
22
23
24
25
```