# EXHIBIT 2

```
              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION

SECURITIES AND EXCHANGE COMMISSION,)
                                   )
     Plaintiff,                    )
                                   ) Case No.
     vs.                           ) 3:18-cv-05080-JST-DMR
                                   )
MICHAEL B. ROTHENBERG and          )
ROTHENBERG VENTURES LLC (f/k/a     )
FRONTIER TECHNOLOGY VENTURE        )
CAPITAL, LLC and ROTHENBERG        )
VENTURES MANAGEMENT COMPANY LLC),  )
                                   )
     Defendants.                   )
_____)


         DEPOSITION OF MICHAEL B. ROTHENBERG
              San Francisco, California
                 Tuesday, May 7, 2019




Reported by:
JOANNE M. FARRELL, RPR, CRR
CSR Nos. 4838(CA), 506(HI), 507(NM)
Job No. 190507VL
```

Page 1

```
              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION

SECURITIES AND EXCHANGE COMMISSION,)
                                   )
     Plaintiff,                    )
                                   ) Case No.
     vs.                           ) 3:18-cv-05080-JST-DMR
                                   )
MICHAEL B. ROTHENBERG and          )
ROTHENBERG VENTURES LLC (f/k/a     )
FRONTIER TECHNOLOGY VENTURE        )
CAPITAL, LLC and ROTHENBERG        )
VENTURES MANAGEMENT COMPANY LLC),  )
                                   )
     Defendants.                   )
_____)


     Deposition of Michael B. Rothenberg, taken
on behalf of Defendants, at Securities and Exchange
Commission, 44 Montgomery Street, Suite 2800, San
Francisco, California 94104, beginning at 9:44 a.m.,
on Monday, May 7, 2019, before Joanne M. Farrell,
Certified Shorthand Reporter No. 4838.
```

Page 2

```
APPEARANCES:

For Plaintiff:

   SECURITIES AND EXCHANGE COMMISSION
   By: E. BARRETT ATWOOD, ESQ.
       ANDREW J. HEFTY, ESQ.
   44 Montgomery Street, Suite 2800
   San Francisco, California 94104
   415.705.2500
   atwoode@sec.gov
   heftya@sec.gov

For Defendant Michael B. Rothenberg:

   ILLOVSKY LAW OFFICE
   By: EUGENE ILLOVSKY, ESQ.
   1611 Telegraph Avenue, Suite 806
   Oakland, California 94612
   510.394.5885
   eugene@illovskylaw.com
```

Page 3

```
Appearances: (Continued)

For Defendant Rothenberg Ventures:

   SHARTSIS FRIESE LLP
   By: JAHAN P. RAISSI, ESQ.
   One Maritime Plaza, Eighteenth Floor
   San Francisco, California 94111
   415.421.6500
   jraissi@sflaw.com
```

Page 4

```
                 INDEX
WITNESS
Michael B. Rothenberg
EXAMINATION                                    PAGE
BY MR. ATWOOD                                    9

                EXHIBITS
NUMBER                                         PAGE
Exhibit 3    Letter dated May 7, 2019 to         14
             Mr. Atwood from Mike

Exhibit 4    Defendant Michael B.                26
             Rothenberg's Response to
             Plaintiff SEC's First Set of
             Interrogatories
Exhibit 5    Handwritten note re Fifth           29
             Amendment privilege

Exhibit 6    Email from Michael Rothenberg       30
             to Barrett Atwood, Andrew
             Hefty, subject line "M ke
             Rothenberg's discovery
             responses," sent on May 1st,
             2019
Exhibit 7    Document entitled "Defendant        31
             Michael B. Rothenberg's
             Responses to Plaintiff SEC's
             Second Set of
             Interrogatories."
Exhibit 8    Document entitled "Defendant        32
             Michael B. Rothenberg's
             Responses to Plaintiff SEC's
             First Set of Requests for
             Admission."
```

```
              EXHIBITS (Cont.)
NUMBER                                         PAGE
Exhibit 18   Document entitled "Interest         64
             Transfer Agreement."

Exhibit 19   Email thread, top one dated         73
             April 5, 2016
Exhibit 20   Email thread, top email from        109
             mikerothenberg@gmail.com sent
             on Monday, December 21st,
             2015, to Brian McDaniel,
             copied to
             amy@archinacapital.com and
             Neil Devani
Exhibit 21   Email thread; top email is          110
             from Neil Devani dated
             December 27th, 2015. Subject
             is "Re Finish Line." It was
             sent to Amy Huang
Exhibit 22   Printout from an Excel              112
             spreadsheet

Exhibit 23   Stock Purchase Agreement            114

Exhibit 24   Screenshot for an account in        128
             Silicon Valley Bank
Exhibit 25   Warrants                            131
Exhibit 26   Compilation of agreements           132
             en itled "Warrant Purchase and
             Sale Agreement by and between
             Frontier Technology Venture
             Capital LLC and Rothenberg
             Ventures 2015 Fund LLC" dated
             December 31st, 2016
Exhibit 27   Summary of  he valua ions           138
Exhibit 28   Email from Marc Fagel/SH            147
             regarding a draft financial
             statement dated February 28 h,
             2019
```

```
              EXHIBITS (Cont.)
NUMBER                                         PAGE
Exhibit 9    Document en itled "Defendant        33
             Michael B. Rothenberg's
             Responses to Plain iff SEC's
             First Set of Requests for
             Production."
Exhibit 10   Document entitled "Declaration      36
             of Michael Rothenberg in
             Support of Defendant Ben
             Reality LLC's Motion for
             Summary Judgment."
Exhibit 11   Document entitled "Ro henberg       46
             Ventures 2016 Fund LP, Second
             Amended and Restated Limited
             Partnership Agreement."

Exhibit 12   Document entitled "Ro henberg       47
             Ventures 2016 Feeder Fund LP."
Exhibit 13   Document entitled "Document         48
             Packet for Amendment to
             Rothenberg Ventures to 2015
             Fund."

Exhibit 14   Document entitled "The              50
             Company's Law 2013 Revision of
             the Cayman Islands Company
             Limited by Shares Memorandum
             and Articles of Associa ion of
             Rothenberg Ventures 2016
             Feeder Fund GP LTD."

Exhibit 15   Document entitled "Amended and      51
             Restated Limited Liability
             Company Agreement for
             Rothenberg Ventures Management
             Company LLC."

Exhibit 16   Document entitled "No ice of        58
             Resigna ion (for now)."
Exhibit 17   Irrevocable Trust Agreement         59
```

```
              EXHIBITS (Cont.)
NUMBER                                         PAGE
Exhibit 29   Statement from Bank of              153
             America, account ending in
             2573
Exhibit 30   Bank statement covering the         160
             time period from February 21
             to March 21, 2019
Exhibit 31   Bank statement for the time         164
             period March 1 to March 31,
             2017, for account ending in
             1761

Exhibit 32   Bank statement from Bank of         165
             America for the time period
             July 1 to July 31st, 2018, for
             an account ending in 0264
Exhibit 33   Email thread                        174
Exhibit 34   Email from Mr. Rothenberg to        181
             Mr. Rothenberg
```

Page 9:

1      San Francisco, California, Monday, May 7, 2019
2                      9:44 a.m.
3                      ---o0o---
4           Michael B. Rothenberg,
5  having been administered an oath, was examined and
6  testified as follows:
7                   EXAMINATION
8  BY MR. ATWOOD:
9      Q. Good morning, Mr. Rothenberg. It's 9:44 and we
10 are on the record here.
11         Could you please state your full name.
12     A. Michael Brent Rothenberg.
13     Q. My name is Barrett Atwood. I'm trial counsel
14 for the Securities and Exchange Commission.
15         If I could just have other counsel introduce
16 themselves for the record.
17         MR. HEFTY: Andrew Hefty for the Securities and
18 Exchange Commission.
19         MR. RAISSI: Jahan Raissi of Shartsis Friese for
20 defendant Rothenberg Ventures.
21         MR. ILLOVSKY: Eugene Illovsky for the witness
22 for the purpose of this deposition.
23         MR. ATWOOD: Thank you, gentlemen.
24 BY MR. ATWOOD:
25     Q. Mr. Rothenberg, I'm just going to go over some

Page 10:

1  guidelines and rules for a deposition. If you have any
2  questions just let me know.
3         You were just sworn in and you're under oath.
4  Just to let you know, even if we take a break during the
5  deposition, you come back, you will still be under oath
6  once we go on the record.
7         Do you understand that?
8      A. I do.
9      Q. And being under oath and testify here is just
10 like testifying in court.
11        Do you understand that?
12     A. I do.
13     Q. Have you been deposed before?
14     A. The question is ever in my life?
15     Q. Yes.
16     A. Yes.
17     Q. How many times?
18     A. Fewer than ten.
19     Q. More than five?
20     A. I don't remember the exact number.
21     Q. Would you say you're somewhat familiar with the
22 process?
23     A. I believe I have the basic lay of the land.
24     Q. Okay. So you have the basic lay of the land,
25 but just some pointers I'd like to point out. You have

Page 11:

1  to verbalize any of your responses today so our court
2  reporter can hear them and she can enter them into the
3  record. Any nonverbal responses we will need you to
4  restate verbally.
5         Does that make sense to you?
6      A. It does.
7      Q. One thing I will do today, I'm sure, is ask some
8  poor questions. However, if I ask a question and you
9  answer it, I'm going to assume you understood the
10 question.
11        Is that fair to you?
12     A. Makes sense.
13     Q. If you don't understand my question, please let
14 me know and I'll do my best to restate it. Okay?
15     A. Okay.
16     Q. If you need to take a break at any time, you're
17 welcome to do so. My only ask is that if there's a
18 pending question, you answer it before that break.
19        Is that okay?
20     A. Okay.
21     Q. Do you have any questions about the deposition
22 process today?
23     A. I do not.
24     Q. Is there any reason why you can't answer
25 truthfully and completely today?

Page 12:

1      A. Yes. I'm -- as I mentioned in the letter to you
2  this morning, I'm extremely fatigued.
3      Q. Okay. Well, with that -- actually, let's circle
4  back to that in a second.
5         I did want to note, Mr. Illovsky, he entered his
6  appearance here. For the purposes of this deposition,
7  he's representing you here.
8         Just so we have a record of it, you are
9  proceeding representing yourself, or what's also known as
10 "pro se" in this litigation; is that right.
11        THE WITNESS: There's no attorney of record at
12 the moment.
13 BY MR. ATWOOD:
14     Q. At the moment. Okay.
15        Do you intend to hire counsel for this matter?
16     A. I would sure like it if that happened. It has
17 not happened at this moment.
18     Q. All right. I want to talk a little bit about
19 your preparation for today. Excluding conversations with
20 counsel, including Mr. Illovsky, but anyone else, have
21 you spoken about your planned testimony with anyone?
22     A. Just with counsel.
23     Q. What did you do to prepare for testimony here
24 today besides speaking with counsel?
25     A. I mean all of the preparation for a deposition

**Page 13**

1 that happens under the guidance of counsel. For me,
2 anyway.
3     Q. Did you review any documents?
4     A. Once again, I mean it's all part of the -- you
5 know, I mean I've been in communication with you for
6 weeks about particular documents, so I've certainly
7 looked at those. And, you know, almost all of the
8 specific types of things that happens with my
9 conversations with counsel.
10    Q. Okay. I understand that and I don't want you to
11 reveal your conversations with counsel, but my question
12 is trying to get at whether you looked at any specific
13 documents to prepare for today's deposition.
14    A. I do not feel like I had time to fully prepare
15 for today's deposition.
16    Q. Okay. Well, could you elaborate on that?
17    A. What's the question?
18    Q. You said you felt like you have not had enough
19 time to prepare for today's deposition?
20    A. Uh-huh.
21    Q. Could you please elaborate on that?
22    A. That's what I meant to say. I don't have
23 anything further to add about that.
24    Q. Okay. Circling back to what you said about not
25 being able to answer truthfully and completely, you

**Page 14**

1 referred to a letter, which we will mark as Exhibit 3.
2     (Exhibit 3 was marked for identification by the
3     court reporter and is attached hereto.)
4 BY MR. ATWOOD:
5     Q. Mr. Rothenberg, you now have Exhibit 3 in front
6 of you. Is this the letter you're referring to?
7     A. It is. There's a couple marks on this paper,
8 but I don't think they affect the language of the letter.
9     Q. Could you --
10    A. Like, I don't know what that is over the G.
11 This is the letter. I'm not sure what -- that seems to
12 be something separate.
13    Q. My guess it is printer ink. But this is the
14 letter you've been referring to?
15    A. Yes, it is.
16    Q. And it is dated May 7th, 2019, which is today.
17 My name is in the introduction, and it's signed
18 "Sincerely, Mike," and that would be you, correct?
19    A. This is me. I sent this, yeah; this is what I'm
20 talking about.
21    Q. And you authored this letter?
22    A. Yes.
23    Q. Getting back to my question about answering
24 truthfully and completely, you mentioned -- well, at
25 least in this letter you mention not getting enough

**Page 15**

1 sleep. Could you tell us about your sleep problems?
2     A. Well, how many different rogs in our phase --
3     (Reporter clarification.)
4     Q. Interrogatories, right?
5     A. Interrogatories.
6     You know, I believe there's more than a hundred,
7 you know, all due in the same week as my deposition was
8 scheduled and now, so I think it's the equivalent of --
9 it's certainly more difficult than any final exam period
10 by a factor of at least ten that I've ever experienced in
11 my life, and during those times I also didn't get to
12 sleep much because you take these things seriously. They
13 are -- the standard of care has to be very high -- very
14 high -- and, you know, you don't get the luxury of
15 guessing. So when it comes to these types of things,
16 they are quite overwhelming in total, and the way I try
17 to handle an overwhelming situation is to work as hard as
18 possible. So that comes out of my sleep and it means
19 that, you know, I just do my best.
20    Q. I appreciate that. And we will talk about that
21 discovery and interrogatories and the requests for
22 admissions later today.
23    How much sleep did you get last night?
24    A. So my -- I believe it was fewer than four hours.
25    Q. Are you taking any medication for your sleep?

**Page 16**

1     A. I would really prefer not to talk about my
2 medication. I think that seems to be out of bounds for
3 what I feel comfortable talking about. My health and my
4 medication, things that I talk about with my doctor, I
5 don't prefer to talk about here.
6     Q. Okay. Are you taking any medication that would
7 interfere with your ability to testify completely and
8 truthfully today?
9     A. What would examples of that be?
10    Q. I don't know.
11    A. I don't know how to answer that, then.
12    Q. Do you believe you're taking any medication that
13 would affect your memory?
14    A. Affect my memory. I believe that, you know,
15 lack of sleep affects my memory. That's why I stated
16 that in this letter.
17    Q. How long have you been suffering from lack of
18 sleep?
19    A. How long has the SEC been involved?
20    Q. So your testimony today is that you've had sleep
21 problems since the SEC's investigation of you?
22    A. I wouldn't even characterize it as sleep
23 problems. I'm making priorities. I have to make
24 decisions. And when there are outstanding things, I have
25 to continue to try to work on them. So it's not even

**Page 17**

1  really a problem.  When I am able to, you know, put my
2  head down, I typically don't have problems falling
3  asleep.  It's a matter of how much time -- how much time
4  there is in a week.
5     Q.  What were you working on yesterday related to
6  this matter that kept you up late?
7     A.  Well, I've already mentioned that talking about
8  the preparations for my deposition are not something I
9  feel, you know, like, that I did with my attorneys are
10 something that I feel is appropriate to talk about.
11    Q.  And we don't want to know the substance of those
12 conversations, but we are entitled to know the length of
13 those meetings.  So are you testifying that you've spent
14 long hours yesterday meeting with counsel?
15       (Discussion off the record.)
16       THE WITNESS:  So you're talking about in person
17 as opposed to preparation I'm doing at the advice of
18 counsel, is that the question?
19 BY MR. ATWOOD:
20    Q.  Let's start with meetings in person yesterday.
21    A.  Approximately three hours.
22    Q.  And who did you meet with?
23    A.  Rob Lott.  He's also an attorney but not an
24 attorney of record here.
25    Q.  What does Mr. Lott represent you in?

**Page 18**

1     A.  He's a personal attorney.
2     Q.  For what matters?
3     A.  What does that -- so, once again, every time you
4  ask me a question about what my counsel talks to me
5  about, I feel very uncomfortable and I prefer not to, you
6  know, try to -- I don't want to do anything that could
7  possibly violate any privileged communications.
8     Q.  Okay.
9     A.  And my understanding is that talking about my
10 conversations with counsel is getting very close to that,
11 and I don't want to violate that.
12    Q.  And I want to be clear, I don't want to ask any
13 questions that will have you reveal the substance of your
14 conversations with counsel.  My question is going to what
15 matters Mr. Lott represents you in.
16       For example, Mr. Illovsky represents you today
17 for the purposes of this deposition.  That's not
18 privileged.
19       So if there's any answer that you can give with
20 respect to Mr. Lott, I'd like to know.
21       MR. ILLOVSKY:  If you want to take a short
22 break, we can just talk about the privilege stuff.
23       THE WITNESS:  Yeah, all their questions are
24 about my attorneys so maybe we can talk about that.
25       MR. ATWOOD:  We can go off the record.

**Page 19**

1        MR. ILLOVSKY:  Let's go off the record briefly.
2          (Recess taken at 9:56 a.m.)
3          (Proceedings resumed at 10:00 a.m.)
4        MR. ATWOOD:  Back on the record.
5  BY MR. ATWOOD:
6     Q.  Mr. Rothenberg, I'll just have the court
7  reporter read back my last question.
8        THE COURT REPORTER:  "Question:  What does
9        Mr. Lott represent you in?"
10       THE WITNESS:  So Mr. Lott has -- yesterday we --
11 he was talking to me in conjunction with this
12 investigation, and he has been doing that really ever
13 since I hired him.  I think the first time I hired him
14 was August or September of 2016 as a direct result of
15 this investigation.  And he has also helped out
16 Rothenberg Ventures and he's helped out the funds, but
17 currently he's helping me with this investigation and
18 would help me if there were other litigations.
19 BY MR. ATWOOD:
20    Q.  Thank you.  And you said you met with Mr. Lott
21 for three hours yesterday?
22    A.  That's the in-person part of it.
23    Q.  Okay.
24    A.  We also spoke on the phone.
25    Q.  How much time did you spend on the phone

**Page 20**

1  together, approximately?
2     A.  Less than three hours.  More than an hour.  I'm
3  not sure of the amount.
4        And let me say I'm not sure it's more than an
5  hour.  It felt like more than an hour, felt like less
6  than three hours.
7     Q.  And you alluded to the fact that you did other
8  preparation for your deposition today; is that correct?
9     A.  That is correct.
10    Q.  Okay.  What else did you do yesterday?
11    A.  So I have reviewed documents.  I don't believe
12 I've had the opportunity to review every document that
13 could ever relate to today's investigation, but I have
14 attempted to review documents of which there are many.
15    Q.  Did you do that yesterday?
16    A.  I have done that many days including yesterday.
17    Q.  Okay.  How much time did you spend doing that
18 yesterday?
19    A.  Also a substantial amount of time.  I don't
20 clock my hours.  I don't get to charge by the hour so I
21 don't know, but it was substantial.
22    Q.  Okay.  More than two hours?
23    A.  Yes.
24    Q.  More than four hours?
25    A.  It could have been.

**Q.** Less than five?
**A.** I don't know. It could have been more than five. I don't track the hours that specifically.
**Q.** I want to get back to talking about your sleep issue, and I want to be clear about this. Do you have any reason to believe that you cannot answer truthfully today?
**A.** Well, to the extent that it has to do with specific memory recall about facts, I have -- it's my understanding that sleep is very directly related to that so I don't want to make any representations about having, you know, full sleep, you know -- you know, full health in my sleep capacity that would make my memory as good as I would like it to be.
**Q.** Okay. And I think that response -- that response is helpful. I think it goes more to the question of whether or not you can testify completely today.
I'm asking is there any reason why you cannot testify truthfully today?
**A.** No, there's not -- there's nothing that should affect the ability to tell the truth. I might have missed the distinction, but I don't think that there's anything that impedes that.
**Q.** Okay. Thank you.

21

Are you under any medication here today during this deposition?
**A.** So I did mention I prefer not to talk about medication prescribed by, you know, a doctor, and so outside of that I have nothing, but inside of that I may.
**Q.** So to the extent you're on -- are you under the influence of any medication here today?
**A.** So nothing that would affect my ability to tell the truth if that's what you're getting at.
**Q.** Thank you.
Are you under the influence of any alcohol today?
**A.** No, certainly not.
**Q.** All right. Let's get back to Exhibit 3, which is the letter you sent. In the letter you assert that you're not inclined to waive any Fifth Amendment right today. Could you explain what you mean by that?
**A.** You asked me very directly on -- you know, in a previous conversation, and so at that time I believe I told you that I did intend to waive it. So I felt as a courtesy to you, having learned some new information that I characterized here, that based on that evolution of thinking that I felt like it was appropriate to give you a courtesy update to that answer since it was different now.

22

**Q.** Okay. Mr. Rothenberg, what is your home address?
**A.** I live at REDACTED, and that's REDACTED, San Francisco, California.
**Q.** And is that your only residence?
**A.** Yes. How would I have -- well, yes.
**Q.** I mean, do you have a second home? That's what I'm getting at.
**A.** No.
**Q.** Are you currently employed?
**A.** How do you -- what does that mean? I have to be my own counsel or I have to be my own -- whatever that means to be pro se. That's my -- I spend more time doing that than anything else.
**Q.** Do you have any sources of income?
**A.** No, I do not.
**Q.** When was the last time you were employed and received income from that employment?
MR. ILLOVSKY: Okay. So Mr. Rothenberg has previously informed the commission this morning that he was going to be asserting his Fifth Amendment privilege. So he's going to do that with a little note that he's going to rely on to make sure that he properly invokes it and just wanted to let you know.
MR. ATWOOD: Certainly. Appreciate it.

23

Can we read back my last question.
MR. ILLOVSKY: Do you remember the last question?
THE WITNESS: I remember it.
MR. ILLOVSKY: So just so you know, he's going to be looking at the note.
MR. ATWOOD: Yeah. That's fine.
THE WITNESS: So on the advice of my attorney, I respectfully decline to answer the question on the grounds of my Fifth Amendment privilege.
BY MR. ATWOOD:
**Q.** Now I have something to read from.
"I am not authorized to compel you to give
evidence or testimony as to which you assert
your Fifth Amendment privilege against
self-incrimination and I have no intention of
doing so. You should also understand that I do
not have the authority to compel your testimony
by granting you immunity from criminal
prosecution. Any question that I ask hereafter
will be with the understanding that if you wish
to assert your privilege, you need merely state
that you intend to assert your Fifth Amendment
privilege. In other words, you're not compelled
to answer any further questions if you believe

24

Page 25:

1 that a truthful answer to the question might
2 tend to show that you committed a crime and you
3 wish to assert your Fifth Amendment privilege
4 against self-incrimination. Accordingly, if you
5 answer any questions instead of asserting your
6 Fifth Amendment privilege, you will be doing so
7 voluntarily."
8     Do you understand that?
9   **A.** Yes.
10  **Q.** "You should be aware that if you refuse to
11 answer a question based on your Fifth
12 Amendment privilege, it is the commission's
13 position that a judge or a jury may take an
14 adverse inference against you in any civil
15 action, including this one, that the commission
16 may later determine to bring against you.
17 That means that the judge or jury would be
18 permitted to infer that your answers to the
19 questions would have tended to incriminate you."
20    Do you understand the commission's position on
21 this?
22  **A.** Is the judge permitted to have an adverse
23 inference or obligated to?
24  **Q.** We will make the argument the judge must. That
25 is our position.

Page 26:

1  **A.** Okay. So it will be the judge's discretion?
2  **Q.** It is a legal question.
3  **A.** Okay. So I understand that you would make that
4 argument.
5  **Q.** Okay. Do you intend to assert your Fifth
6 Amendment privilege to all further questions concerning
7 your prior employment?
8  **A.** Yes.
9  **Q.** Mr. Rothenberg, since we've talked about some of
10 the discovery that has been issued in this case today, I
11 wanted to turn to that now.
12    We will mark this as Exhibit 4.
13    (Exhibit 4 was marked for identification by the
14    court reporter and is attached hereto.)
15    MR. ILLOVSKY: Mr. Atwood, since it's safe to
16 assume that Mr. Rothenberg is going to be asserting his
17 privilege throughout, I would ask that -- I took a look,
18 I noticed that there was a protective order entered in
19 the case, so I would ask to designate the transcript
20 going forward as confidential per protective order.
21    MR. ATWOOD: You're entitled to make that
22 request. We would disagree with that assertions of Fifth
23 Amendment privilege would qualify for protection under
24 that protective order. We can send you a copy of that
25 protective order later today, and there are procedures in

Page 27:

1 there for how to designate information confidential per
2 protective order and there are procedures in there about
3 how to resolve any disputes. So we will note that for
4 the record. I can tell you now we are not going to agree
5 with that the assertion of Fifth Amendment privilege
6 makes testimony subject to the protective order. We can
7 talk about that further off the record.
8    MR. ILLOVSKY: Yes.
9 BY MR. ATWOOD:
10  **Q.** Mr. Rothenberg, you've been handed what's been
11 marked as Exhibit 4. Do you recognize that document?
12  **A.** I'm going to answer this to all questions, as my
13 counsel mentioned, from this point onward, so I don't
14 how -- if you want me to read this every time, I will.
15 Or how you want to do that or do you have a suggestion?
16 But that's why we said that.
17  **Q.** I'm more than happy for us to come up with a
18 shorthand so you don't have to read that same sentence,
19 whatever shorthand works for you. But I am going to be
20 asking you a lot of questions today, and if you're going
21 to be asserting your privilege, there needs to be
22 something on the record about it. So if you want to take
23 a moment to confer with counsel, you're more than welcome
24 to do so.
25    MR. ILLOVSKY: Can we -- so I know that

Page 28:

1 sometimes people use a shorthand. I tend not to like the
2 shorthand. If we could agree that the court reporter
3 could -- that Mr. Rothenberg could use a shorthand but
4 that the court reporter could, instead of writing his
5 shorthand response -- that doesn't work? Then he'll just
6 have to read this.
7    MR. ATWOOD: All right.
8 BY MR. ATWOOD:
9  **Q.** If you're taking your attorney's advice, you'll
10 need to read that every time I ask you a question that
11 you don't want to answer. I would be more than willing
12 to stipulate that we can say "Fifth Amendment" or
13 something like that and we would have the understanding
14 that it meant what's on that piece of paper.
15    MR. ILLOVSKY: All right. Let's do it that way.
16 Otherwise, it will just take an exceedingly long time.
17    THE WITNESS: Well, does it matter what the
18 record looks like?
19    MR. ATWOOD: Why don't we go off the record
20 right now.
21    (Recess taken at 10:13 a.m.)
22    (Proceedings resumed at 10:22 a.m.)
23    MR. ATWOOD: Back on the record.
24 BY MR. ATWOOD:
25  **Q.** Mr. Rothenberg, I'll remind you that you're

**Page 29**

1  under oath. We had some discussions with counsel
2  regarding assertion of your Fifth Amendment privilege
3  while we were off the record. And now there's a document
4  that will be marked as Exhibit 5.
5        (Exhibit 5 was marked for identification by the
6        court reporter and is attached hereto.)
7  BY MR. ATWOOD:
8     Q. And, Mr. Rothenberg, you've been handed what's
9  been marked as Exhibit 5. Can you please read that into
10 the record.
11    A. "On the advice of my attorney, I respectfully
12       decline to answer that question on the grounds
13       of my Fifth Amendment privilege."
14    Q. And it's my understanding going forward if you
15 are going to assert your Fifth Amendment privilege, you
16 will reference Exhibit 5; is that correct?
17    A. That works.
18    Q. Mr. Illovsky, gossiping like to add anything?
19       MR. ILLOVSKY: No, I think you captured it
20 accurately.
21 BY MR. ATWOOD:
22    Q. So turning back to Exhibit 4, Mr. Rothenberg, do
23 you recognize Exhibit 4?
24    A. I refer you to my answer on Exhibit 5.
25    Q. Okay. I'll note for the record that Exhibit 4

**Page 30**

1  is defendant Michael B. Rothenberg's responses to
2  plaintiff SEC's first set of interrogatories.
3        If we could turn to page 3 of Exhibit 4, there
4  is a response here provided by defendant Rothenberg.
5        Mr. Rothenberg, did you draft this response to
6  interrogatory number 1?
7     A. I refer you to Exhibit 5.
8     Q. Let's turn to page 7 of Exhibit 4.
9        Mr. Rothenberg, is that your signature on page 7
10 of Exhibit 4?
11    A. I refer you to Exhibit 5.
12    Q. Mr. Rothenberg, do you intend to assert your
13 Fifth Amendment privilege to all further questions
14 concerning Exhibit 4?
15    A. On the advice of my attorney I will be asserting
16 my Fifth Amendment privilege for all further questions.
17    Q. And specifically that includes Exhibit 4?
18    A. All questions does include Exhibit 4.
19    Q. Thank you.
20       MR. ATWOOD: Let's mark this as Exhibit 6.
21       (Exhibit 6 was marked for identification by the
22       court reporter and is attached hereto.)
23 BY MR. ATWOOD:
24    Q. Mr. Rothenberg, you've now been handed what's
25 been marked as Exhibit 6. Do you recognize this

**Page 31**

1  document?
2     A. I refer you to Exhibit 5.
3     Q. I'll note for the record that Exhibit 6 is an
4  email from Michael Rothenberg to Barrett Atwood, Andrew
5  Hefty, subject line "Mike Rothenberg's discovery
6  responses," and it was sent on May 1st, 2019, at
7  11:56 p.m.
8        And I'll note that attached to this email were
9  rog responses and RFA responses.
10       And I'll represent to you, Mr. Rothenberg, that
11 we did receive those attachments.
12       In this email you write that you plan to
13 supplement these objections with responses where relevant
14 within the next week.
15       Do you still intend to do that?
16    A. I refer you to Exhibit 5.
17    Q. If I ask you any further questions regarding
18 Exhibit 6, will you assert your Fifth Amendment
19 privilege?
20    A. Exhibit 6 is within the universe of all future
21 questions, so yes.
22       MR. ATWOOD: Let's mark this as Exhibit 7.
23       (Exhibit 7 was marked for identification by the
24       court reporter and is attached hereto.)
25

**Page 32**

1  BY MR. ATWOOD:
2     Q. Mr. Rothenberg, you've been handed what's been
3  marked as Exhibit 7.
4        And I'll note for the record that it is
5  captioned "Defendant Michael B. Rothenberg's Responses to
6  Plaintiff SEC's Second Set of Interrogatories."
7        Mr. Rothenberg, do you recognize this document?
8     A. I refer you to Exhibit 5.
9     Q. Mr. Rothenberg, if you could look at page 8 of
10 Exhibit 7, is that your signature on page 8?
11    A. I refer you to Exhibit 5.
12    Q. Mr. Rothenberg, do you intend to assert your
13 Fifth Amendment privilege as to all further questions
14 concerning Exhibit 7?
15    A. As stated before, yes.
16       MR. ATWOOD: I'll mark this as Exhibit 8.
17       (Exhibit 8 was marked for identification by the
18       court reporter and is attached hereto.)
19 BY MR. ATWOOD:
20    Q. Mr. Rothenberg, you've been handed what's now
21 been marked as Exhibit 8.
22       I'll note for the record that it is captioned
23 "Defendant Michael B. Rothenberg's Responses to Plaintiff
24 SEC's First Set of Requests for Admission."
25       Do you recognize Exhibit 8, Mr. Rothenberg?

Page 33

1   A. I refer you to Exhibit 5.
2   Q. If we could turn to page 27 of Exhibit 8.
3       Mr. Rothenberg, is that your signature on
4   page 27 of Exhibit 8?
5   A. I refer you to Exhibit 5.
6   Q. Do you intent to assert your Fifth Amendment
7   privilege to all further questions concerning Exhibit 8?
8   A. I refer you to Exhibit 5.
9       MR. ATWOOD: We will mark these as Exhibit 9.
10      (Exhibit 9 was marked for identification by the
11      court reporter and is attached hereto.)
12  BY MR. ATWOOD:
13  Q. Mr. Rothenberg, you've now been handed a
14  document that's been marked as Exhibit 9.
15      I'll state for the record that the caption is
16  "Defendant Michael B. Rothenberg's Responses to Plaintiff
17  SEC's First Set of Requests for Production."
18      Mr. Rothenberg, do you recognize Exhibit 9?
19  A. I refer you to Exhibit 5.
20  Q. If we could turn to page 11 of Exhibit 9,
21  please. Mr. Rothenberg, is that your signature on
22  page 11 of Exhibit 9?
23  A. I refer you to Exhibit 5.
24  Q. Do you intend to assert your Fifth Amendment
25  privilege to all further questions concerning Exhibit 9?

Page 34

1   A. I refer you to Exhibit 5.
2   Q. Mr. Rothenberg, are you familiar with the
3   California limited liability company with the name
4   Rothenberg Group LLC?
5   A. I refer you to Exhibit 5.
6   Q. Do you own all or nearly all of Rothenberg Group
7   LLC?
8   A. I refer you to Exhibit 5.
9   Q. Do you control Rothenberg Group LLC?
10  A. I refer you to Exhibit 5.
11  Q. Did you form Rothenberg Group LLC?
12  A. I refer you to Exhibit 5.
13  Q. Mr. Rothenberg, are you familiar with a Delaware
14  limited liability company River Ecosystems, LLC?
15  A. I refer you to Exhibit 5.
16  Q. Are you aware that River Ecosystems, LLC, was
17  formerly known as Rothenberg Venture Events LLC?
18  A. I refer you to Exhibit 5.
19  Q. Mr. Rothenberg, do you currently hold any equity
20  interest in River Ecosystems, LLC?
21  A. I refer you to Exhibit 5.
22  Q. Have you at any time held an equity interest in
23  River Ecosystems, LLC?
24  A. I refer you to Exhibit 5.
25  Q. Do you control River Ecosystems, LLC, at this

Page 35

1   time?
2   A. I refer you to Exhibit 5.
3   Q. Have you ever controlled River Ecosystems, LLC?
4   A. I refer you to Exhibit 5.
5   Q. Who is Nicholas Canafax?
6   A. Barrett, I refer you to Exhibit 5.
7   Q. Mr. Rothenberg, are you familiar with a Delaware
8   limited liability company known as River Studios LLC?
9   A. I refer you to Exhibit 5.
10  Q. Are you aware that River Studios LLC, a Delaware
11  limited liability company, was originally incorporated as
12  Ben Reality LLC?
13  A. I refer you to Exhibit 5.
14  Q. Do you currently hold any equity interest in
15  River Studios LLC?
16  A. I refer you to Exhibit 5.
17  Q. Have you at any time held an equity interest in
18  River Studios LLC?
19  A. I refer you to Exhibit 5.
20  Q. Do you currently or have you ever controlled
21  River Studios LLC?
22  A. I refer you to Exhibit 5.
23  Q. Mr. Rothenberg, are you familiar with Ben
24  Reality LLC, a California limited liability company?
25  A. I refer you to Exhibit 5.

Page 36

1   Q. Have you ever held an equity interest in Ben
2   Reality LLC, a California limited liability company?
3   A. I refer you to Exhibit 5.
4   Q. Do you now or have you ever controlled Ben
5   Reality LLC, a California limited liability company?
6   A. I refer you to Exhibit 5.
7       MR. ATWOOD: Let's mark this as our next
8   exhibit.
9       (Exhibit 10 was marked for identification by the
10      court reporter and is attached hereto.)
11  BY MR. ATWOOD:
12  Q. Mr. Rothenberg, you've now been handed what has
13  been marked as Exhibit 10.
14      And I'll note for the record that it is
15  captioned "Declaration of Michael Rothenberg in Support
16  of Defendant Ben Reality LLC's Motion for Summary
17  Judgment."
18      Mr. Rothenberg, do you recognize Exhibit 10?
19  A. I refer you to Exhibit 5.
20  Q. On page 2 of Exhibit 10 there's a signature. Is
21  that your signature, Mr. Rothenberg?
22  A. I refer you to Exhibit 5.
23  Q. Do you intend to assert your Fifth Amendment
24  privilege to all further questions concerning Exhibit 10?
25  A. I refer you to Exhibit 5.

```
 1      Q.  Do you intend to assert your Fifth Amendment
 2   privilege to all further questions concerning Rothenberg
 3   Group LLC?
 4      A.  I refer you to Exhibit 5.
 5      Q.  Do you intend to assert your Fifth Amendment
 6   privilege to all further questions concerning River
 7   Ecosystems, LLC?
 8      A.  I refer you to Exhibit 5.
 9      Q.  Do you intend to assert your Fifth Amendment
10   privilege to all further questions concerning River
11   Studios LLC, a Delaware limited liability company?
12      A.  I refer you to Exhibit 5.
13      Q.  Do you intend to assert your Fifth Amendment
14   privilege to all further questions concerning Ben Reality
15   LLC, a California limited liability company?
16      A.  I refer you to Exhibit 5.
17      Q.  Mr. Rothenberg, are you familiar with Folsom
18   Property LLC, a Delaware limited liability company?
19      A.  I refer you to Exhibit 5.
20      Q.  Mr. Rothenberg, are you aware that that same
21   entity was formerly known as Rothenberg Ventures, LLC?
22      A.  I refer you to Exhibit 5.
23      Q.  Do you now or have you ever held an equity
24   interest in Folsom Property LLC?
25      A.  I refer you to Exhibit 5.
                              37
```

```
 1      Q.  Do you now or have you ever controlled Folsom
 2   Property LLC?
 3      A.  I refer you to Exhibit 5.
 4      Q.  Do you intend to assert your Fifth Amendment
 5   privilege to all further questions concerning Folsom
 6   Property LLC?
 7      A.  I refer you to Exhibit 5.
 8      Q.  Mr. Rothenberg, are you familiar with River
 9   Accelerator LLC?
10      A.  I refer you to Exhibit 5.
11      Q.  Do you now or have you ever held any equity
12   interest in River Accelerator LLC?
13      A.  I refer you to Exhibit 5.
14      Q.  Do you now or have you ever controlled River
15   Accelerator LLC?
16      A.  I refer you to Exhibit 5.
17      Q.  Do you intend to assert your Fifth Amendment
18   privilege to all further questions concerning River
19   Accelerator LLC?
20      A.  I refer you to Exhibit 5.
21      Q.  Mr. Rothenberg, are you familiar with an entity
22   known by Rothenberg Management LLC, a Delaware limited
23   liability company?
24      A.  I refer you to Exhibit 5.
25      Q.  Mr. Rothenberg, do you now or have you ever held
                              38
```

```
 1   an equity interest in Rothenberg Management LLC?
 2      A.  I refer you to Exhibit 5.
 3      Q.  Do you now or have you ever controlled
 4   Rothenberg Management LLC?
 5      A.  I refer you to Exhibit 5.
 6      Q.  Do you intend to assert your Fifth Amendment
 7   privilege to all further questions concerning Rothenberg
 8   Management LLC?
 9      A.  I refer you to Exhibit 5.
10      Q.  Mr. Rothenberg, are you familiar with a Texas
11   limited partnership with the name Rothenberg Investments,
12   LP?
13      A.  I refer you to Exhibit 5.
14      Q.  Do you intend to assert -- actually, let me back
15   up.
16          Do you now or have you ever held an equity
17   interest in Rothenberg Investments, LP?
18      A.  I refer you to Exhibit 5.
19      Q.  Do you now or have you ever controlled
20   Rothenberg Investments, LP?
21      A.  I refer you to Exhibit 5.
22      Q.  Do you intend to assert your Fifth Amendment
23   privilege concerning Rothenberg Investments, LP?
24      A.  I refer you to Exhibit 5.
25      Q.  Mr. Rothenberg, are you familiar with a Texas
                              39
```

```
 1   corporate entity with the name Rothenberg Investments MG,
 2   Inc.?
 3      A.  I refer you to Exhibit 5.
 4      Q.  Mr. Rothenberg, do you now or have you ever
 5   controlled Rothenberg Investments MG, Inc.?
 6      A.  I refer you to Exhibit 5.
 7      Q.  Do you now or have you ever held an equity
 8   interest in Rothenberg Investments MG, Inc.?
 9      A.  I refer you to Exhibit 5.
10      Q.  Do you intend to assert your Fifth Amendment
11   privilege to all further questions concerning Rothenberg
12   Investments MG, Inc.?
13      A.  I refer you to Exhibit 5.
14      Q.  Mr. Rothenberg, are you familiar with a Texas
15   corporate entity with the name Rothenberg Realty PLLC?
16      A.  I refer you to Exhibit 5.
17      Q.  Mr. Rothenberg, do you now or have you ever
18   controlled Rothenberg Realty PLLC?
19      A.  I refer you to Exhibit 5.
20      Q.  Do you now or have you ever possessed an equity
21   interest in Rothenberg Realty PLLC?
22      A.  I refer you to Exhibit 5.
23      Q.  Do you intend to assert your Fifth Amendment
24   privilege to all further questions concerning Rothenberg
25   Realty PLLC?
                              40
```

**Page 161**

 1   A. I do not remember if I have deposited it, and I
 2  don't know.
 3   Q. Have you opened any bank accounts since Bank of
 4  America closed your accounts?
 5   A. Are you going to try to harass any bank accounts
 6  that I opened into closing?
 7   Q. Have you opened any bank accounts since Bank of
 8  America closed your accounts?
 9   A. I'm not -- I'm trying to understand if the
10  government intends to continue this harassment that has
11  cost me my banking relationships. If that is what you're
12  getting at, then I would like to respectfully ask you to
13  stop that harassment. It's been going on for three
14  years. And if that's what you're trying to do, to
15  continue to figure out how to do that, I would ask you to
16  stop that, please.
17   Q. Have you opened any bank accounts since Bank of
18  America closed this account?
19   A. It is possible.
20   Q. So you're saying you don't remember?
21   A. That's not what I said. I said "it's possible."
22   Q. It's a yes or a no --
23   A. I am very reluctant to give you a name because
24  you have not told me that you will not harass them. So
25  the harassment you did with these subpoenas -- I provided

**Page 162**

 1  you bank statements that are accurate, and you
 2  continue -- how many times did you subpoena these guys?
 3  A lot. So what I'm trying to understand is I want an
 4  assurance from you that you will not continue to harass
 5  my banking relationships into closing; and without that,
 6  it's hard for me to honestly try to enable you.
 7   Q. So it's a yes or no question.
 8      Have you opened any bank accounts since Bank of
 9  America closed your accounts?
10   A. It's possible.
11   Q. Okay. Where did you open a bank account?
12   A. Are you not going to give me any kind of
13  assurance that the government won't continue this
14  harassment?
15   Q. Where did you open a bank account?
16   A. What is your intention? You realize this is
17  personal, that you've caused me great suffering with this
18  particular point. So if you have any other intention
19  besides harassment, this would be the time to assure me
20  of that.
21   Q. Well, Mr. Rothenberg, as you said earlier, I
22  disagree with your premise that this is harassment.
23      The simple question is where have you opened
24  bank accounts since Bank of America closed these
25  accounts?

**Page 163**

 1      MR. ILLOVSKY: If it enters into your thinking,
 2  I think there's a discovery cut-off, so I don't know that
 3  there would necessarily be more discovery.
 4      THE WITNESS: It does in terms of my thinking.
 5  Didn't that already happen? When was the discovery
 6  cut-off? May 1st?
 7      MR. ILLOVSKY: Early May, I think.
 8      THE WITNESS: Capital One.
 9  BY MR. ATWOOD:
10   Q. Thank you.
11      How many accounts did you open at Capital One?
12   A. One.
13   Q. And that's in your name?
14   A. That's right.
15   Q. Did you open any accounts at Capital One in the
16  name of any other entities?
17   A. I did not.
18   Q. Mr. Rothenberg, when is the last time you bought
19  a suite for the Golden State Warriors at Oracle Arena?
20   A. I have personally never done that.
21   Q. What about for any of your businesses, when is
22  the last time you did that?
23   A. So that conflates, that pretends like I am my
24  businesses, so I reject the premise of that question.
25   Q. Okay.

**Page 164**

 1      MR. ATWOOD: We will mark this as Exhibit 31.
 2      (Exhibit 31 was marked for identification by the
 3      court reporter and is attached hereto.)
 4  BY MR. ATWOOD:
 5   Q. Mr. Rothenberg, you've been handed what has been
 6  marked as Exhibit 31, which is a Bank of America bank
 7  statement for the time period March 1 to March 31, 2017,
 8  for account ending in 1761, and it is for -- the account
 9  holder name is Rothenberg Investment Co. LLC at the
10  address of 1062 Folsom Street, Suite 200, San Francisco,
11  California 94103.
12      Mr. Rothenberg, is that one of your entities?
13   A. I refer you to Exhibit 5.
14   Q. Is that address the business address that you've
15  used for RVMC?
16   A. I refer you to Exhibit 5.
17   Q. If I ask you any further questions regarding
18  this bank statement, do you intend to assert your Fifth
19  Amendment privilege?
20   A. Yes.
21   Q. Okay. Let's turn to page 3 of the exhibit, 31.
22  There's an entry, the first entry under withdrawals and
23  other debits on March 16, 2017, there's a wire out to the
24  Golden State Warriors.
25      Did you authorize that transfer?

## Page 165

1  **A.** I refer you to Exhibit 5.
2     MR. ATWOOD: We will mark this as Exhibit 32.
3     (Exhibit 32 was marked for identification by the
4     court reporter and is attached hereto.)
5  BY MR. ATWOOD:
6     **Q.** Mr. Rothenberg, you've been handed what's been
7  marked as Exhibit 32, which is a bank statement from Bank
8  of America for the time period July 1 to July 31st, 2018,
9  for an account ending in 0264.
10    Do you recognize this document?
11    **A.** I refer you to Exhibit 5.
12    **Q.** The account name on the bank statement is River
13 Ecosystems LLC. Is that one of your entities?
14    **A.** Exhibit 5.
15    **Q.** And the address on the bank statement is that
16 same address at 1062 Folsom Street. Is that the address
17 that you used in relation to this business entity?
18    **A.** Exhibit 5.
19    **Q.** Let's turn to page 4 of Exhibit 32. The first
20 entry on page 4 is dated July 20th, 2018. It's a wire
21 out to Golden State Warriors for an amount of $77,000.
22    Did you authorize that transfer, Mr. Rothenberg?
23    **A.** Exhibit 5.
24    **Q.** Mr. Rothenberg, if I ask you any further
25 questions regarding Exhibit 32, do you intend to assert

## Page 166

1  your Fifth Amendment privilege?
2     **A.** Yes.
3     **Q.** So we've just gone through two bank statements
4  showing significant transfers of money to the Golden
5  State Warriors.
6     Do you know what those transfers were for?
7     **A.** What transfers were for to the Warriors?
8     **Q.** Yeah.
9     **A.** Okay. Sure. Exhibit 5.
10    **Q.** Based on your facial expression, I take it that
11 you understand that that was kind of a ridiculous
12 question?
13    **A.** Yeah, it seems like you are really reaching.
14    **Q.** "Really reaching." What do you mean?
15    **A.** Well, you're asking about entities that are not
16 Rothenberg Ventures or the funds or mentioned in your
17 complaint. You know, you're going way outside the
18 bounds. So I understand that you, you know, have as wide
19 of a mandate as you want, and it's starting to, you know,
20 really just feel like harassment.
21    **Q.** Okay. Well, we did look at a bank statement
22 where Rothenberg Investment Co. LLC sent at least $16,000
23 to your personal bank account, so there is a relationship
24 there that the documents show.
25    Gossiping like to testify about that

## Page 167

1  relationship?
2     **A.** Once again, even, you know, that entity is not
3  Rothenberg Ventures or the funds. So, you know, you are
4  the SEC. There's the funds. There's something that
5  you're -- have an oversight over, and you're going into
6  other things completely. So I don't see the relation and
7  you haven't established that.
8     **Q.** We are following the money. That's what we do.
9     Gossiping like to testify regarding the
10 relationship between yourself and Rothenberg Investment
11 Co. LLC?
12    **A.** As I've mentioned, this is another blindside and
13 I haven't had any time to prepare, so I will not be able
14 to testify. I'll refer you to Exhibit 5 for all of these
15 ambushes.
16    **Q.** Okay. So if I ask you any further questions
17 regarding your relationship with Rothenberg Investment
18 Company LLC, do you intend to assert your Fifth Amendment
19 right?
20    **A.** That's a question you asked earlier and the
21 answer is still yes.
22    **Q.** Mr. Rothenberg, do you currently -- or excuse
23 me, within the last year have you sold access to any
24 season tickets to the Golden State Warriors?
25    **A.** I don't personally have a suite, as we've

## Page 168

1  already established, so the answer to that could never be
2  yes.
3     **Q.** Have you participated in any sales of tickets to
4  the Golden State Warriors game in the last year?
5     **A.** This is just so outside the bounds of anything
6  related to this case. I'll just refer you to Exhibit 5.
7  These are not appropriate questions.
8     **Q.** Well, let's be clear. There's a difference
9  between what's an appropriate question and whether or not
10 it's admissible or if you're asserting your Fifth
11 Amendment privilege. So I want the record to be clear,
12 you're not answering my question because you're asserting
13 your Fifth Amendment privilege, correct?
14    **A.** That is what I said.
15    **Q.** Okay.
16    **A.** I don't know the difference between all these
17 objections. As you know, I'm not very -- you know, I'm
18 not a lawyer.
19    **Q.** That's right, but you do have counsel here today
20 representing you, correct?
21    **A.** Well, he's not saying much, is he?
22    Sorry. You're not. So if you have objections
23 to things, please say them. I don't know what they are.
24    MR. ILLOVSKY: Do you want to take a break so
25 that we can discuss it?

### Page 205

1  look like for a document that's out of context but
2  shorthand notes.
3      Now, when you spent a lot of the time talking
4  about things that looked like documents with third
5  parties that were contracts or agreements, that made
6  sense. And I wasn't always able to recall those specific
7  things for the purposes of this right now, but that makes
8  sense to me as something for the commission to spend its
9  time on.
10      MR. ATWOOD: Okay. Let's go off the record for
11 a minute.
12      (Discussion off the record.)
13      MR. ATWOOD: We will go back on the record.
14 BY MR. ATWOOD:
15   Q. Mr. Rothenberg, thank you for your time today.
16 We have no further questions.
17      (Whereupon, the proceedings were concluded at
18 4:55 p.m.)

### Page 206

1      I, the undersigned, a Certified Shorthand Reporter
2  of the State of California, do hereby certify:
3      That the foregoing proceedings were taken before me
4  at the time and place herein set forth; that any
5  witnesses in the foregoing proceedings, prior to
6  testifying, were administered an oath; that a record of
7  the proceedings was made by me using machine shorthand
8  which was thereafter transcribed under my direction; that
9  the foregoing transcript is a true record of the
10 testimony given.
11     Further, that if the foregoing pertains to the
12 original transcript of a deposition in a Federal Case,
13 before completion of the proceedings review of the
14 transcript { } was {X} was not requested.
15     I further certify I am neither financially
16 interested in the action nor a relative or employee of
17 any attorney or any party to this action.
18     IN WITNESS WHEREOF, I have this date subscribed my
19 name.
20
21 Dated: May 13, 2019
22
23      <%11726,Signature%>
24      Joanne M. Farrell, CSR No. 4838
25

### Page 207

1              CERTIFICATE OF WITNESS
2
3
4
5   I, MICHAEL B. ROTHENBERG, do hereby declare under
6   penalty of perjury that I have read the entire
7   foregoing transcript of my deposition testimony,
8   or the same has been read to me, and certify that
9   it is a true, correct and complete transcript of
10  my testimony given on May 7, 2019, save and except
11  for changes and/or corrections, if any, as indicated
12  by me on the attached Errata Sheet, with the
13  understanding that I offer these changes and/or
14  corrections as if still under oath.
15
16   _____ I have made corrections to my deposition.
17   _____ I have NOT made any changes to my deposition.
18
19
20 Signed
21 _____
22 MICHAEL B. ROTHENBERG
23 Dated this _____ day of _____ of 20____.

### Page 208

1              ERRATA SHEET
2  Deposition of: MICHAEL B. ROTHENBERG
   Date taken:  May 7, 2019
3  Case:  SEC v. Michael B. Rothenberg, et al.
4  PAGE  LINE
   _____ _____ CHANGE: _____
5        REASON: _____
6  _____ _____ CHANGE: _____
         REASON: _____
7
   _____ _____ CHANGE: _____
8        REASON: _____
9  _____ _____ CHANGE: _____
         REASON: _____
10
   _____ _____ CHANGE: _____
11       REASON: _____
12 _____ _____ CHANGE: _____
         REASON: _____
13
   _____ _____ CHANGE: _____
14       REASON: _____
15 _____ _____ CHANGE: _____
         REASON: _____
16
   _____ _____ CHANGE: _____
17       REASON: _____
18 _____ _____ CHANGE: _____
         REASON: _____
19
   _____ _____ CHANGE: _____
20       REASON: _____
21 _____ _____ CHANGE: _____
         REASON: _____
22
   _____ _____ CHANGE: _____
23       REASON: _____
24
   Signed_____
25 Dated_____

1           I, the undersigned, a Certified Shorthand Reporter
2    of the State of California, do hereby certify:
3           That the foregoing proceedings were taken before me
4    at the time and place herein set forth; that any
5    witnesses in the foregoing proceedings, prior to
6    testifying, were administered an oath; that a record of
7    the proceedings was made by me using machine shorthand
8    which was thereafter transcribed under my direction; that
9    the foregoing transcript is a true record of the
10   testimony given.
11          Further, that if the foregoing pertains to the
12   original transcript of a deposition in a Federal Case,
13   before completion of the proceedings review of the
14   transcript { } was {X} was not requested.
15           I further certify I am neither financially
16   interested in the action nor a relative or employee of
17   any attorney or any party to this action.
18           IN WITNESS WHEREOF, I have this date subscribed my
19   name.
20
21   Dated:  May 13, 2019
22
23            <%11726,Signature%>
24            Joanne M. Farrell, CSR No. 4838
25

206