# EXHIBIT 9

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**

**FOR**

**ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC**
a Delaware Limited Liability Company

This Amended and Restated Limited Liability Company Agreement of Rothenberg Ventures Management Company, LLC, a Delaware limited liability company (the "Company"), is entered into as of December 28, 2012, by the Members listed on Exhibit A attached hereto and such other persons that may be admitted as Members from time to time to the Company in accordance with this Agreement (the "Members").

The Company has been formed as a limited liability company pursuant to the Delaware Limited Liability Company Act (the "Act") by the filing of a Certificate of Formation in the office of the Secretary of State of the State of Delaware on September 5, 2012. Effective as of September 6, 2012, the sole Member of the Company entered into a Limited Liability Agreement to provide terms to govern the Company, and the Member desires to amend and restate that prior agreement in its entirety and enter into this Agreement to provide terms to govern the Company. Therefore, the Members hereby agree as follows:

**ARTICLE I**
**NAME, PURPOSE AND**
**PRINCIPAL OFFICE OF COMPANY**

ARTICLE 1.1.  Name.  The name of the Company is "Rothenberg Ventures Management Company, LLC."  The affairs of the Company shall be conducted under such name or such other name as the Manager, in its discretion, shall determine.

ARTICLE 1.2.  Agreement.  This Agreement shall constitute the "Limited Liability Company Agreement" (as that term is used in the Act) of the Company effective as of the date set forth above.  The rights, powers, duties, obligations and liabilities of the Members shall be determined pursuant to the Act and this Agreement.  It is the express intention of the Members that this Agreement shall be the sole statement of agreement among them.

ARTICLE 1.3.  Powers.

     (a)     Authority.  The Company may engage in any lawful act or activity for which a limited liability company may be organized under the Act.

     (b)     Powers.  Subject to all of the terms and provisions hereof, the Company shall have all powers necessary, suitable or convenient for the accomplishment of its purposes, including all of the powers available to it as a limited liability company under the Act.

     (c)     Primary Business of the Company.  The Company has been formed for the purpose of (a) performing management services to investment funds, (b) making and holding investments, (c) investing and reinvesting the assets invested (as capital contributions) by the Member in the Company, (d) performing management and other advisory services, and

1

SEC-RV-E-0000013

(e) conducting any business that may lawfully be conducted by a limited liability company formed under the Act.  The Company shall have all of the powers granted to a limited liability company under the laws of the State of Delaware.

ARTICLE 1.4.  Registered Agent for Service of Process.  The Company will continuously maintain with the State of Delaware an agent for service of process, which agent shall be named in the Certificate, as it may be amended from time to time.  The Manager may change the agent for service of process as it from time to time may determine.

ARTICLE 1.5.  Principal Office.  The principal office of the Company shall be located in Delaware or at such place as the Manager may determine.  The Manager may change the location of the principal office of the Company at any time.

ARTICLE 1.6.  Definitions.

(a)      Act.  This term shall have the meaning ascribed to it in the preamble.

(b)      Additional Members.  This term shall have the meaning ascribed to it in Section 3.3.

(c)      Agreement.  This Amended and Restated Limited Liability Company Agreement of Rothenberg Ventures Management Company, LLC, a Delaware limited liability company.

(d)      Capital Account.  This term shall have the meaning ascribed to it in Section 6.1.

(e)      Capital Contribution.  The total amount of cash and property contributed to the Company by the Members.

(f)      Certificate.  The Certificate of Formation of the Company.

(g)      Code.  The Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

(h)      Company.  This term shall have the meaning ascribed to it in the preamble.

(i)      Fiscal Year.  This term shall have the meaning ascribed to it in Section 6.3(a).

(j)      Interest.  A Member's interest in the Company as a Member (and the economic rights associated with such Interest as determined under this Agreement).  The Interests of a Member shall be represented by Units, as set forth on Exhibit A, as it may be amended from time to time by the Manager.

(k)      Majority Interest. The Members holding a majority of the Percentage Interests.

2

SEC-RV-E-0000014

        (l)      <u>Manager</u>.  The manager designated pursuant to Article 4.1(c) or any other persons that succeeds it as manager of the Company.

        (m)      <u>Members</u>.  This term shall have the meaning ascribed to it in the preamble.

        (n)      <u>Net Income and Net Loss</u>.  This term shall have the meaning ascribed to it in Section 6.3(b)

        (o)      <u>Percentage Interest</u>.  The percentage interests of the Members are set forth on <u>Exhibit A,</u> as it may be amended from time to time by the Manager.  The percentage interest of a Member shall be expressed as a percentage determined by dividing the number of Units held by the Member by the total number of Units outstanding.

        (p)      <u>TMP</u>.  This term shall have the meaning ascribed to it in Section 12.13.

        (q)      <u>Treasury Regulations</u>.  The income Tax Regulations promulgated under the Code, as such Treasury Regulations may be amended from time to time (including corresponding provisions of succeeding Treasury Regulations).

## ARTICLE II
## TERM AND TERMINATION OF THE COMPANY

ARTICLE 2.1.  <u>Term</u>.  The term of the Company commenced on the filing of the Certificate, and the Company shall continue until terminated pursuant to the terms of this Agreement or by operation of law.

ARTICLE 2.2.  <u>Termination</u>.  The Company shall terminate upon the written consent of the Manager and the affirmative vote or written consent of a Majority Interest.

## ARTICLE III
## MEMBERS; CHANGES IN MEMBERSHIP

ARTICLE 3.1.  <u>Authorization and Issuance of Units</u>.  The Company shall be authorized to issue One Million (1,000,000) Units.  The Company shall not issue additional classes of Units or issue Units in excess of the authorized number without the written consent of the Manager and the affirmative vote or written consent of a Majority Interest.

ARTICLE 3.2.  <u>Current Members</u>.  The persons listed on <u>Exhibit A</u> are admitted as the initial Members of the Company effective as of the date of this Agreement.  <u>Exhibit A</u> shall set forth the amount of Capital Contributions made by the Members, the number of Units and the Percentage Interests of the Members, as amended by the Manager.

ARTICLE 3.3.  <u>Admission of Additional Members</u>.  Persons may be admitted to the Company as additional members ("<u>Additional Members</u>") on such terms and conditions as shall be determined by the Manager.  The Manager shall reflect the admission of such persons as Members in the records of the Company on <u>Exhibit A</u>.  Each new Member shall be admitted only upon execution of this Agreement or an appropriate amendment to it in which he agrees to be bound by the terms and provisions of this Agreement as they may be modified by that

3

SEC-RV-E-0000015

amendment and upon such Member's contribution of such assets, if any, as required by the Manager. The Manager shall be authorized, without the prior consent of the Members, to update Exhibit A to this Agreement from time to time to reflect the transfer of Units, the issuance of additional Units to the Members or Additional Members. Admission of Additional Members shall not cause the dissolution of the Company.

ARTICLE 3.4. Withdrawal of a Member.

(a)     In the event of the withdrawal of any Member from the Company, the Percentage Interests and Capital Accounts of the withdrawing Member and the remaining Members shall be adjusted as of the date of withdrawal, as determined by the Manager. No Member may be permitted to withdraw without the written consent of the Manager.

(b)     The withdrawal of a Member shall not be cause for dissolution of the Company.

ARTICLE 3.5. Voting Rights. Except as expressly provided in this Agreement or the Certificate of Formation, Members shall have no voting, approval or consent rights. All Units shall be voting. For purposes of determining the voting interest of a Member, a Member's voting power shall be based upon the number of Units held.

ARTICLE 3.6. No Certificate of Units. The Company will not issue certificates for Units issued. The number of Units held by the Members shall be set forth on Exhibit A, as amended by the Manager.

## ARTICLE IV
## MANAGEMENT, DUTIES AND RESTRICTIONS

ARTICLE 4.1. Management.

(a)     Management of the Company by Manager. The business, property and affairs of the Company shall be managed and all powers of the Company shall be exercised by or under the direction of the Manager.

(b)     Powers of Manager. Subject to the express limitations contained in any provision of this Agreement, the Manager shall control the management of the business and affairs of the Company. The Manager shall have all powers necessary, convenient or appropriate for carrying out the purposes and business of the Company, including, without limitation, the power to exercise on behalf and in the name of the Company all of the powers described in the Act. The Manager shall have the authority to act individually. All acts or decisions of the Manager may be taken at a meeting or by written consent. The Manager may delegate to any person or persons any or all of its powers, rights and obligations under this Agreement and may appoint, contract or otherwise deal with any person to perform any acts or services for the Company as the Manager may determine. The Manager is authorized to execute any and all documents on behalf of the Company, including documents in connection with the opening of bank or brokerage accounts.

4

SEC-RV-E-0000016

       (c)     <u>Number, Term and Qualifications</u>.  The number of Managers of the Company shall be fixed at one (1).  The initial Manager shall be Michael Rothenberg.  The Manager shall serve until the earlier of (i) the removal of such Manager in accordance with this Agreement, (ii) such Manager's resignation, or (iii) such Manager's death or dissolution.  A Manager may, but need not be, a Member.  The name and address of the Manager is set forth on <u>Exhibit B</u>.  The Manager shall be authorized, without the prior consent of the Members, to update <u>Exhibit B</u> from time to time to reflect the name and address of the Manager.

       (d)     <u>Resignation</u>.  The Manager may resign at any time by giving written notice to the Company.  The resignation of the Manager shall take effect upon receipt of that notice.

       (e)     <u>Removal</u>.  The Manager may be removed at any time, with or without cause, by the affirmative vote or written consent of a Majority Interest.

       (f)     <u>Vacancies</u>.  Any vacancy occurring for any reason of the Manager shall be filled by the affirmative vote or written consent of a Majority Interest.

ARTICLE 4.2.  <u>No Non-Manager Participation in Management</u>.  The Members, other than a Member that is a Manager, shall take no part in the management of the affairs of the Company, and shall not have any power or authority to act for or on behalf of the Company except as specifically authorized by the Manager.

ARTICLE 4.3. <u>Officers</u>.

       (a)     <u>Appointment of Officers</u>.  The Manager may at any time appoint officers to whom they may delegate some or all of its duties, powers and responsibilities, including its specific powers and approval rights hereunder.  The officers will serve at the pleasure of the Manager.  Any individual may hold any number of offices.  The general areas of responsibility and specific powers and duties of each officer will be determined by the Manager and may be revised from time to time.

       (b)     <u>Removal and Resignation of Officers</u>.  Subject to the rights, if any, of an officer under a contract of employment, any officer may be removed, either with or without cause, by the Manager at any time.  Any officer may resign at any time by giving written notice to the Manager.  Any resignation will take effect on the date of the receipt of that notice or at any later time specified in that notice.

**ARTICLE V**
**CAPITAL CONTRIBUTIONS**

ARTICLE 5.1.  <u>Capital Contributions of the Members</u>.  The Members, if approved by a Majority Interest, shall make additional Capital Contributions to the Company from time to time as determined by the Manager in accordance with their respective Percentage Interests.  The Capital Contributions will be in the form of cash or property.  The amount of the Capital Contributions shall be set forth on <u>Exhibit A</u>.

5

SEC-RV-E-0000017

ARTICLE 5.2.  Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Members, the Manager or any officer, employee or agent of the Company shall be obligated personally for any such debt, obligation or liability of the Company.

## ARTICLE VI
## CAPITAL ACCOUNTS AND ALLOCATIONS

ARTICLE 6.1.  Capital Accounts.  A capital account shall be maintained on the Company's books for each Member in accordance with the Treasury Regulations ("Capital Account").  In the event any Interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Interest.

ARTICLE 6.2.  Allocation of Net Income or Net Loss.  Except as otherwise provided in this Agreement, the Net Income and Net Loss of the Company shall be allocated to the Members so as to, as nearly as possible, increase or decrease, as the case may be, each Member's Capital Account to the extent necessary such that each Member's Capital Account is equal to the amount that such Member would receive if the Company were dissolved, its assets sold for their book value, its liabilities satisfied in accordance with their terms and all remaining amounts were distributed to the Members in accordance with Section 8.2(a) of this Agreement immediately after making such allocation.  The intent of the foregoing allocation is to comply with Treasury Regulations Section 1.704-1(b) and ensure that the Members receive allocations of Net Income and Net Loss pursuant to this Section 6.2 in accordance with their relative interests in the Company, with the interest of each Member in the Company determined by reference to such Member's relative rights to receive distributions from the Company pursuant to Section 8.2(a).

ARTICLE 6.3.  Definitions.  Unless the context requires otherwise, the following terms have the meanings specified below for purposes of this Agreement:

(a)   Fiscal Year.  The Company's Fiscal Year for taxable year shall end on December 31 of each year or, if earlier, the date the Company is terminated during a year.  The Manager may at any time elect a different Fiscal Year (as required or permitted by the Code and the applicable Treasury Regulations).

(b)   Net Income and Net Loss.  The net book income or loss of the Company for any relevant period, as computed in accordance with federal income tax principles and as adjusted pursuant to the following provisions, under the method of accounting elected by the Company for federal income tax purposes.  The net book income or loss of the Company shall be computed, *inter alia*, by:

(1)   including as income or deductions, as appropriate, any tax-exempt income and any expenses that are neither properly included in the computation of taxable income nor capitalized for federal income tax purposes;

(2)   including as a deduction when paid or incurred (depending on the Company's method of accounting) any amounts utilized to organize the Company

6

SEC-RV-E-0000018

or to promote the sale of (or to sell) an Interest in the Company, except that amounts for which an election is properly made by the Company under Section 709(b) of the Code shall be accounted for as provided therein;

(3)     including as a deduction any losses incurred by the Company in connection with the sale or exchange of property notwithstanding that such losses may be disallowed to the Company for federal income tax purposes under the related party rules of Section 267(a)(1) or 707(b) of the Code;

(4)     calculating the gain or loss on disposition of Company assets and the depreciation, amortization or other cost recovery deductions, if any, with respect to the Company's assets by reference to their book value rather than their adjusted tax basis; and

(5)     if the book value of Company assets is adjusted to equal fair market value as provided in Section 13.3, then the Net Income and Net Loss shall include the amount of any increase or decrease in such book values attributable to such adjustment.

## ARTICLE VII
## EXPENSES

The Company shall pay all costs and expenses incurred in connection with its activities. The Manager, Members and employees of the Company shall be entitled to reimbursement by the Company for expenses incurred by them relating to the Company's business, as determined by the Manager in its discretion.

## ARTICLE VIII
## DISTRIBUTIONS

ARTICLE 8.1.  Interest.  No interest shall be paid to any Member on account of his interest in the capital of, or on account of his investment in, the Company.

ARTICLE 8.2. Distributions.

(a)     Subject to applicable law, the Manager may elect from time to time to make distributions to the Members.  Any such distributions shall be made to the Members pro rata in proportion to their Percentage Interests at the time of distribution.

(b)     Notwithstanding Section 8.2(a), the Manager shall, for each taxable year, cause the Company to make a tax distribution to the Members (taking into consideration the due dates for estimated tax payments) pro rata in proportion to their Percentage Interests and shall be based upon the Member that, at the time of such tax distribution, would have the highest tax liability as a result of the allocable share of income, gain, loss, deductions and credits of the Company (taking into account any applicable withholding or payment of taxes on the distributions, including those having been made pursuant to Section 13.2) for such applicable fiscal quarter (or other applicable period), as determined by the Manager (taking into consideration any information provided in writing by the Members to the Company); provided,

7

SEC-RV-E-0000019

however, that no such distribution shall be made to the extent that the Manager determines, in its sole discretion, that funds are not reasonably available for such distribution by virtue of applicable law, contractual obligation or current or future needs of the Company.  Such distribution to each Member shall be made no later than the first day of the third month following the end of the Fiscal Year of the Company with respect to which such distribution is made.  Distributions made pursuant to this Section 8.2(b) shall be applied against (and reduce by a corresponding amount) amounts otherwise distributable to Members pursuant to Section 8.2(a), and distributions made pursuant to Section 8.2(a) in a year shall be applied against (and reduce by a corresponding amount) amounts otherwise distributable to Members pursuant to this Section 8.2(b) with respect to such year.

      (c)      The Manager may make dissolution distributions to the Members in cash or distribute Company assets in kind, and the distribution of any such assets in kind shall be made on the basis of the fair market value of such asset as of the date of distribution, as determined by the Manager in good faith.  The Capital Accounts of the Members shall be adjusted accordingly to preserve the economic interests of the Members as the result of any distribution in kind.

<h2 style="text-align:center">ARTICLE IX<br>ASSIGNMENT OR TRANSFER OF<br>INTERESTS</h2>

No Member may sell, transfer, assign, pledge, mortgage or otherwise dispose of his Interest in the Company without the approval of the Manager.  Such approval may be granted or withheld in the Manager's sole discretion.  In the event that any part of the Member's Interest in the Company is transferred incident to a divorce or by operation of law, the transferee of the Interest who is not approved by the Manager shall only obtain rights in the Company with respect to distributions, Net Income and Net Loss attributable to the transferred Interest but shall have no rights as a Member under this Agreement or the Act, including no rights to vote or otherwise participate in the management of the Company.  Notwithstanding the foregoing, the Interest of the transferee shall be subject to the restrictions contained in this Agreement applicable to the transferred Interest held by a Member.  Any transfer of an Interest that is not made in accordance with the terms of this Agreement shall be null and void.

<h2 style="text-align:center">ARTICLE X<br>DISSOLUTION AND LIQUIDATION OF THE COMPANY</h2>

ARTICLE 10.1  Dissolution.  Upon termination of the Company in accordance with Article II:

      (a)      The affairs of the Company shall be wound up and the Company shall be dissolved.  The Manager shall serve as the liquidator.

      (b)      Distributions in dissolution may be made in cash or in kind or partly in cash and partly in kind.

      (c)      The net assets of the Company, after payment of the liabilities of the Company, shall be distributed to the Members in accordance with Section 8.2(a).

8

SEC-RV-E-0000020

Notwithstanding anything to the contrary contained in this Agreement, and notwithstanding any custom or rule of law to the contrary, to the extent that any Member's Capital Account has a deficit balance upon dissolution of the Company, such deficit shall not be an asset of the Company and such Member shall not be obligated to contribute such amount to the Company to bring the balance of such Member's Capital Account to zero.

## ARTICLE XI
## FINANCIAL ACCOUNTING, REPORTS AND CONFIDENTIALITY

ARTICLE 11.1.  <u>Financial and Tax Accounting and Reports</u>.  The Manager shall cause the Company's tax return and IRS Form 1065, Schedule K1, to be prepared and delivered in a timely manner to the Members (but in no event later than ninety (90) days after the close of each of the Company's Fiscal Years).  The financial statements of the Company, if any are prepared, shall be prepared in accordance with the provisions of this Agreement and in a manner determined by the Manager.

ARTICLE 11.2.  <u>Supervision; Inspection of Books</u>.  Proper and complete books of account of the affairs of the Company shall be kept under the supervision of the Manager at the principal office of the Company.  Such books shall be open to inspection by a Member, upon reasonable notice, during normal business hours.

## ARTICLE XII
## OTHER PROVISIONS

ARTICLE 12.1.  <u>Execution and Filing of Documents</u>.  Concurrently with the execution of this Agreement, the Manager (or their designee) shall execute and file any necessary documents conforming to the requirements of the Act in the office of the Secretary of State for the State of Delaware.

ARTICLE 12.2.  <u>Other Instruments and Acts</u>.  The Members agree to execute any other instruments or perform any other acts that are or may be necessary to effectuate and carry on the business of the Company or to perfect their admission as a Member.

ARTICLE 12.3.  <u>Binding Agreement</u>.  This Agreement shall be binding upon the transferees, successors, assigns and legal representatives of the Members.

ARTICLE 12.4.  <u>Governing Law</u>.  This Agreement shall be governed by and construed under the laws of the State of Delaware as applied to agreements among Delaware residents made and to be performed entirely within Delaware.

ARTICLE 12.5.  <u>Notices</u>.  Any notice or other communication that a Member desires to give to another party shall be in writing and shall be deemed effectively given upon personal delivery or upon deposit in any United States mail box, by registered or certified mail, postage prepaid, or upon transmission by telegram, telecopy or electronic mail, addressed to the other party at the address shown in the records of the Company.

SEC-RV-E-0000021

ARTICLE 12.6.  <u>Amendment Procedure</u>.  Except as otherwise provided herein, this Agreement may be amended by the written consent of the Manager and the affirmative vote or written consent of a Majority Interest.

ARTICLE 12.7.  <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement of the Members and supersedes all prior agreements between the Members with respect to the Company.

ARTICLE 12.8.  <u>Titles; Subtitles</u>.  The titles and subtitles used in this Agreement are used for convenience only and shall not be considered in the interpretation of this Agreement.

ARTICLE 12.9.  <u>Company Name</u>.  The Company shall have the exclusive ownership and right to use the Company name (and any name under which the Company shall elect to conduct its affairs) as long as the Company continues.

ARTICLE 12.10.  <u>Exculpation</u>.  The Manager shall not be liable to a Member or the Company for honest mistakes of judgment, for action or inaction taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Company, for losses due to such mistakes, action or inaction, or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company, provided that such employee, broker or agent was selected, engaged or retained and supervised with reasonable care; provided that this Section 12.10 shall not extend to any action which constitutes fraud, willful misconduct or gross negligence.  The Manager may consult with counsel and accountants in respect of Company affairs and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such counsel or accountants, provided that they shall have been selected with reasonable care.

ARTICLE 12.11.  <u>Indemnification</u>.  The Company agrees to indemnify, out of the assets of the Company only, the Manager, the Members and their agents, to the fullest extent permitted by law and to save and hold them harmless from and in respect of all (a) reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action or demand against the Manager, the Members, the Company or their agents that arise out of or in any way relate to the Company, its properties, business or affairs and (b) such claims, actions and demands and any losses or damages resulting from such claims, actions and demands, including amounts paid in settlement or compromise (if recommended by attorneys for the Company) of any such claim, action or demand; provided, however, that this indemnity shall not extend to conduct not undertaken in good faith nor to any fraud, willful misconduct or gross negligence.  Any person receiving an advance with respect to expenses shall be required to agree to return such advance to the Company in the event it is subsequently determined that such person was not entitled to indemnification hereunder.  Any indemnified party shall promptly seek recovery under any other indemnity or any insurance policies by which such indemnified party may be indemnified or covered.  No payment or advance may be made to any person under this Section 12.11 to any person who may have a right to any other indemnity (by insurance or otherwise) unless such person shall have agreed, to the extent of any other recovery, to return such payments or advances to the Company.

10

SEC-RV-E-0000022

ARTICLE 12.12.  <u>Arbitration</u>.  Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in San Mateo, California, in accordance with the rules, then obtaining, of the American Arbitration Association.  Any award shall be final, binding and conclusive upon the parties.  A judgment upon the award rendered may be entered in any court having jurisdiction thereof.

ARTICLE 12.13.  <u>Tax Matters Partner</u>.  When needed, the Manager shall appoint a "tax matters partner" for the Company ("<u>TMP</u>").  The TMP shall have the right to resign as TMP by giving thirty (30) days' written notice to the Members.  Upon the resignation, dissolution or bankruptcy of the TMP, a successor TMP shall be elected by the Manager.  All expenses incurred by the TMP in serving as the TMP shall be Company expenses and shall be paid by the Company.

### ARTICLE XIII
### MISCELLANEOUS TAX COMPLIANCE PROVISIONS

ARTICLE 13.1.  <u>Income Tax Allocations</u>.

(a)     Except as otherwise provided in this section or as otherwise required by the Code and the Treasury Regulations, Company income, gain, loss, deduction, or credit for income tax purposes shall be allocated in the same manner as the corresponding book items are allocated pursuant to this Agreement.

(b)     In accordance with Code Section 704(c) and the Treasury Regulations, income, gain, loss and deduction with respect to any asset contributed to the capital of the Company shall, solely for tax purposes, be allocated between the Members so as to take account of any variation between the adjusted basis of such property for federal income tax purposes and its initial book value.  The Company shall use the traditional method, as described in Treasury Regulations Section 1.704-3(b).

(c)     In the event the book value of any Company asset is adjusted, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its book value in accordance with the Treasury Regulations

ARTICLE 13.2.  <u>Withholding</u>.  The Company shall at all times be entitled to make payments with respect to any Member in amounts required to discharge any obligation of the Company to withhold or make payments to any governmental authority with respect to any federal, state, local or other jurisdictional tax liability of such Member.  For purposes of this Agreement, any such withholdings or payments shall be treated as a tax distribution to the shareholder on behalf of whom the withholding or payment was made.

ARTICLE 13.3.  <u>Book-Up of Company Assets</u>.  The book value of all Company assets may be adjusted to equal their respective gross fair market values, as determined in good faith by the Manager, as of the following times:  (i) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis capital contribution; (ii) the distribution by the Company to a Member of more than a de minimis amount of money or Company property as consideration for an interest in the Company; and (iii)

SEC-RV-E-0000023

the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g), including the termination of the Company for federal income tax purposes pursuant to Section 708(b)(1)(B) of the Code.  The book-up shall be made in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(f).

12

SEC-RV-E-0000024

IN WITNESS WHEREOF, the Members have executed this Amended and Restated Limited Liability Company Agreement as of the date first above written.

MEMBER:

Michael Rothenberg

MEMBER:

Thomas Eaton Leep

SEC-RV-E-0000025

IN WITNESS WHEREOF, the Members have executed this Amended and Restated Limited Liability Company Agreement as of the date first above written.

MEMBER:

_____

Michael Rothenberg

MEMBER:

*Thomas E. Leep*

_____

Thomas Eaton Leep

**SIGNATURE PAGE TO ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**

SEC-RV-E-0000026

## EXHIBIT A

## CAPITAL CONTRIBUTIONS, NUMBER OF UNITS AND PERCENTAGE INTERESTS OF MEMBERS

### (AS OF DECEMBER 28, 2012)

| Member's Name | Member's Address | Member's Capital Contribution | Number of Units | Initial Capital Account Balance | Percentage Interest |
|---|---|---|---|---|---|
| Michael Rothenberg | REDACTED<br>Cambridge, MA<br>REDACTED | | 999,000 | | 99.90% |
| Thomas Eaton Leep | REDACTED<br>Menlo Park, CA<br>REDACTED | | 1,000 | | 0.10% |

SEC-RV-E-0000027

## EXHIBIT B

### NAMES AND ADDRESSES OF MANAGER
### AS OF DECEMBER 28, 2012

Manager                         Address

Michael Rothenberg         REDACTED  Cambridge, MA REDACTED

SEC-RV-E-0000028