# EXHIBIT 10



## INTEREST TRANSFER AGREEMENT

This Interest Transfer Agreement (the "Agreement") is made and entered into as of March 26, 2015, by and between Regina Scully ("Purchaser") and Michael Rothenberg ("Seller" and together with Purchaser, each a "Party" and collectively, the "Parties").

Seller desires to transfer and sell to Purchaser four and a half percent (4.5%) (the "Percentage") of the membership interest (the "Minority Interest") in Rothenberg Ventures Management Company, LLC a Delaware limited liability company (the "Company") for $2,250,000.00 (the "Purchase Price").

## AGREEMENT

The Parties hereby agree as follows:

1. **Purchase and Sale**.

    1.1   **General**.  Subject to the terms and conditions of (i) this Agreement, (ii) the Certificate of Formation of Rothenberg Ventures Management Company, LLC, as amended from time to time, and (iii) the Operating Agreement of Rothenberg Ventures Management Company, LLC, as amended from time to time, Seller hereby transfers the Minority Interest to Purchaser on the Closing Date (as defined below) in exchange for the payment of the Purchase Price.

    1.2   **Closing; Delivery.**  The purchase and sale of the Minority Interest pursuant to this Agreement and the Company Agreements (as defined below) shall occur effective March 26, 2015 (the "Closing Date").

2. **Terms of the Minority Interest.**

    2.1   **Profit Rights**.  The Company manages multiple funds, with such relationships defined by management agreements by and between such funds and the Company. As a result, the Company often is provided with a right to share in the profits of funds (the "Carried Interest"). The Minority Interest shall have a right to the Percentage of any such Carried Interest received by the Company, less any selling or other expenses incurred by the Company that are allocable to the underlying assets, as determined by the Manager in its reasonable discretion. The Company may make such payments to Purchaser in cash or assets that were received by the Company in-kind, and the distribution of any such assets in-kind shall be made on the basis of the fair market value of any such asset as of the date of receipt by Company, as determined by the Company in good faith. Purchaser shall execute such documents and agree to such restrictions as requested by Company or the underwriters with respect to any assets distributed to Purchaser by Company with respect to the Minority Interest.

    2.2   **Liquidation Rights**.  A "Liquidation Transaction" means a liquidation, dissolution, or winding up of the Company, which shall be deemed to occur if (a) the Company shall sell, convey, exclusively license or otherwise dispose of all or substantially all of its property or business or merge with or into or consolidate with any other corporation, limited liability company or other entity (other than a wholly-owned subsidiary of the Company), or (b) the members the Company sell their membership interests in a transaction or series of

FOIA Confidential Treatment Requested
Sensitive Materials

RVMC00038683

transactions that has the effect of transferring the Company's business, provided that none of the following shall be considered a Liquidation Transaction: (i) a merger effected exclusively for the purpose of changing the domicile of the Company, (ii) an equity financing in which the Company is the surviving corporation, (iii) a transaction in which the stockholders of the Company immediately prior to the transaction own 50% or more of the voting power of the surviving corporation following the transaction. In the event of a Liquidation Transaction, the Purchaser shall receive the pro rata portion of the Percentage of any related payment due to any other members.

2.3  **Anti-Dilution**. If the Company increases the membership interest such that the Minority Interest would be below the Percentage, the Company shall automatically issue additional membership interests in order to maintain the Percentage of the Minority Interest.

2.4  **Other Rights**. Notwithstanding any other provisions of this Agreement, the Purchaser, as holder of the Minority Interest and otherwise, hereby waives and shall not be entitled to any and all rights or privileges that may be expected or provided for by default or otherwise under applicable law. For the sake of clarity, such waived rights and privileges include but are not limited to rights to other revenue or fees collected by the Company, information rights, voting rights, control rights, rights of first offer, and rights of first refusal.

3.  **REPRESENTATIONS AND WARRANTIES OF PURCHASER.** In connection with the transfer of the Minority Interest to Purchaser, Purchaser represents and warrants that:

3.1  Purchaser is aware of the Company's business affairs and financial condition and has acquired sufficient information about the Company to reach an informed and knowledgeable decision to acquire the Participation Interest. Purchaser is purchasing the Participation Interest for investment for Purchaser's own account only and not with a view to, or for resale in connection with, any "distribution" thereof within the meaning of the Securities Act of 1933, as amended (the "Securities Act") or under any applicable provision of state law. Purchaser does not have any present intention to transfer the Participation Interest to any other person or entity.

3.2  Purchaser understands that the Minority Interest has not been registered under the Securities Act by reason of a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of Purchaser's investment intent as expressed herein.

3.3  Purchaser is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act. Purchaser represents that Purchaser is not subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act. Purchaser is a United States person (as defined by Section 7701(a)(30) of the Code).

3.4  Purchaser understands that no public market now exists for any of the securities issued by the Company, and that the Company has made no assurances that a public market will ever exist for the Participation Interest.

3.5  Purchaser further acknowledges and understands that the Participation Interest must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available. Purchaser further acknowledges and understands that the Company is under no obligation to register the Participation Interest.

3.6     Purchaser understands that Purchaser may suffer adverse tax consequences as a result of Purchaser's purchase or disposition of the Participation Interest. Purchaser represents that Purchaser has consulted any tax consultants Purchaser deems advisable in connection with the purchase or disposition of the Participation Interest and that Purchaser is not relying on the Company for any tax advice.

3.7     Neither Purchaser, nor any of its officers, directors, employees, agents, holders of capital stock or partners has either directly or indirectly, including through a broker or finder (a) engaged in any general solicitation, or (b) published any advertisement in connection with the offer and sale of the Participation Interest.

4.     **AGREEMENT TO BE BOUND**.  Seller, the Company and Purchaser agree and acknowledge that the Company is a party to the agreements enumerated on Exhibit A hereto (the "Company Agreements"). Purchaser agrees to accept the obligations and limitations of, and where applicable, become a party to, the Company Agreements.

5.     **LEGENDS.**  Purchaser authorizes the Company and its agents to place on each certificate for Minority Interest which Purchaser may receive pursuant to this Agreement and the Company Agreements any legends required under the Company Agreements and/or state securities laws, including but not limited to the following legends:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE, AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER SUCH ACT AND/OR APPLICABLE STATE SECURITIES LAWS, OR UNLESS THE COMPANY HAS RECEIVED AN OPINION OF COUNSEL OR OTHER EVIDENCE, REASONABLY SATISFACTORY TO THE COMPANY AND ITS COUNSEL, THAT SUCH REGISTRATION IS NOT REQUIRED.

6.     **THIRD PARTY BENEFICIARIES**.  This Agreement and the Company Agreements shall be binding upon and inure solely to the benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person other than the Company any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement and the Company Agreements.

7.     **MISCELLANEOUS**.

7.1     Non-Assignability and Non-Transferability.  Purchaser shall have no right to assign, transfer or pledge this Agreement or to assign, transfer or pledge any of Purchaser's rights hereunder or the Minority Interest except with the written approval of the Company. In the event an assignment, transfer, or pledge is required by law, such transaction may only take place between Purchaser and Seller at reasonably agreed upon terms.

7.2     Governing Law.  This Agreement shall be governed by the laws of the State of Delaware.

FOIA Confidential Treatment Requested
Sensitive Materials

RVMC00038685

7.3     Prior Agreements and Supersession. This Agreement contains all of the agreements of the parties hereto with respect to any matters covered or mentioned in this Agreement, and no prior agreement or understanding pertaining to any such matters shall be effective for any purpose. No provision of this Agreement may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Agreement supersedes any other agreement or understanding, including those provided in Exhibit A, and any default applicable laws.

7.4     Invalidity and Construction. Any provision of this Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate the other provisions hereof and such other provisions shall remain in full force and effect. If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms. This Agreement is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Agreement shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

7.5     Advice of Counsel. CONSULTANT ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, CONSULTANT HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND CONSULTANT HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

7.6     No Third Party Rights. This Agreement creates the rights and duties only between Seller and Purchaser, and no third party shall be deemed to be or shall have any rights as a third party beneficiary.

7.7     Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same document.

*[Signature Page Follows]*

The parties have executed this Interest Transfer Agreement as of the date first written above.

PURCHASER:

By: *Regina K. Scully*

Name: REGINA K. Scully LIVING TRUST

SELLER:

By: *[signature]*

Name: Michael Rothenberg

COMPANY:

ROTHENBERG VENTURES MANAGEMENT COMPANY, LLC

By: *[signature]*

Name: Michael Rothenberg

Title: CEO

FOIA Confidential Treatment Requested
Sensitive Materials

RVMC00038687