UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL B. ROTHENBERG, et al.,<br><br>Defendants. | Case No. 18-cv-05080-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DISCORGEMENT AND PENALTIES**<br><br>Re: ECF No. 83 |

Before the Court is Plaintiff Securities and Exchange Commission's ("SEC") motion for disgorgement and penalties against Defendant Michael B. Rothenberg. ECF No. 83. Rothenberg opposes the motion. ECF No. 90. The Court will grant the motion.

## I.   BACKGROUND

On August 20, 2018, the SEC filed a complaint against both Rothenberg and his company, Rothenberg Ventures LLC ("RVMC"). ECF No. 1 ("Compl.") ¶ 1. As alleged in the complaint, Rothenberg managed, owned, and operated RVMC, which served as an investment advisor to a series of venture capital funds. *Id.* ¶¶ 12-20. Rothenberg also initiated a series of personal business ventures under the umbrella of the "River" brand, including a car racing team and an online store. *Id.* ¶¶ 28-29. Though Defendants marketed the River brand to potential venture capital fund investors "as a vehicle that would benefit them by creating synergies between technology startups, entrepreneurs, and investors," Defendants did not adequately disclose that the Funds would invest in the River brand companies – Rothenberg's personal business ventures – themselves. *Id.* ¶¶ 32-33. When the River brand companies began to lose money, RVMC's finance director warned Rothenberg that he needed to cut costs. *Id.* ¶ 35. Instead, Defendants

continued to improperly funnel money from the Funds into Rothenberg's personal ventures and to "fund . . . his lifestyle." *Id.* ¶ 36.

In 2016, Defendants developed a proposed pooled investment fund, the Co-Fund, to invest in a privately held technology company by purchasing its common shares. *Id.* ¶¶ 48-52. Pursuant to Defendants' marketing of the Co-Fund, they received $1.35 million in investments intended for the Co-Fund, which they promptly funneled into RVMC accounts, Rothenberg's personal ventures, and Rothenberg's personal bank account. *Id.* ¶¶ 53-56. When Defendants ultimately had to repay $1 million to a Co-Fund investor, they did so by liquidating assets of two of the Funds and misappropriating the profits. *Id.* ¶¶ 59-64.

During this period, Defendants also misappropriated money from the Funds by knowingly withdrawing at least $7 million more in fees than was authorized by their agreements with investors. *Id.* ¶¶ 44-47, 65. Rothenberg used this money to pay expenses for River brand companies and his personal expenses. *Id.* ¶¶ 65-71. Defendants further engaged in a series of deceptive and self-dealing transactions to conceal all of the above misconduct. *Id.* ¶¶ 72-80.

The complaint asserts two claims for relief: (1) Defendants violated Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2), and (2) Defendants violated Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. *Id.* ¶¶ 81-90.

On October 17, 2018, Rothenberg consented to an entry of judgment of permanent injunction. ECF No. 19 ("Judgment"). RVMC consented to a judgment of permanent injunction the same day. ECF No. 20. As part of his Judgment, Rothenberg agreed to pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 209(e)(2)(C) of the Advisers Act, 15 U.S.C. § 80b-9(e)(2)(C). Judgment at 3. He also agreed, for the purposes of the motion for disgorgement and civil penalties, that:

> (a) Defendant is precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony,

2

> and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

*Id.*

With liability already determined, the only issues before the Court are the appropriate amounts for disgorgement, prejudgment interest, and civil penalties. The SEC seeks from Rothenberg $18,776,800 in disgorgement, $3,663,323.47 in prejudgment interest, and a civil penalty of $9 million. ECF No. 83 at 4. The SEC does not seek a monetary award against RVMC, which is no longer controlled by Rothenberg. *Id.*

## II.  DISCUSSION

### A.  Disgorgement and Prejudgment Interest

#### 1.  Legal Standard

Once a defendant's violation of federal securities law has been decided, "a district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws. Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *SEC v. Platforms Wireless,* 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp,* 142 F.3d 1186, 1191 (9th Cir. 1998)) (internal quotation marks omitted). "The amount of disgorgement should include all gains flowing from the illegal activities." *Id.* (quoting *SEC v. JT Wallenbrock & Assocs.,* 440 F.3d 1109, 1114 (9th Cir. 2006)). The SEC bears the "burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *Id.* (citing *First Pac. Bancorp*, 142 F.3d at 1191). Once the SEC has met its burden, the burden shifts to the defendant to demonstrate that the figure is not a reasonable approximation. *Id.*

A court may order disgorgement even if the violator "is no longer in possession of such funds due to subsequent, unsuccessful investments or other forms of discretionary spending." *JT Wallenbrock & Assocs.,* 440 F.3d at 1115-16. Moreover, when parties "unlawfully received money from investors . . . [t]his was the rough equivalent of receiving an 'interest free loan' from investors." *Platforms Wireless,* 617 F.3d at 1099. Disgorgement, therefore, typically includes

3

1  prejudgment interest to ensure that wrongdoers do not profit from their illegal conduct. *SEC v.*
2  *Cross Fin. Servs., Inc.,* 908 F. Supp. 718, 734 (C.D. Cal. 1995).

### 2. Analysis

Here, the SEC seeks to disgorge $18,776,800 from Rothenberg, plus an additional $3,663,323.47 in interest. ECF No. 83 at 4. In support of its motion, the SEC presents the declaration, supplemental declaration, and expert report of forensic accountant Gerald T. Fujimoto. ECF Nos. 84, 92, 84-1. Fujimoto is a partner at Deloitte Financial Advisory Services LLP with approximately 35 years of accounting experience, including 16 years in forensic accounting. ECF No. 84 ¶¶ 1-2. Fujimoto concludes:

> There is, in the aggregate, an asset shortfall across the Rothenberg Investment Funds of approximately $18.8 million, nearly all of which was (i) transferred to Mr. Rothenberg personally (approximately $3.8 million) (ii) utilized to fund other entities under Mr. Rothenberg's control (approximately $8.8 million), and (iii) used to payRVMC expenses over and above the management and administrative fees to which RVMC was entitled under the terms of the Management Agreements (approximately $5.7 million).

ECF No. 84-1 at 6.

Additionally, the SEC calculates the interest on these gains to be $3,663,323.47. ECF No. 83 at 20. As ordered in the Judgment, that amount was calculated based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). *See id.*; Judgment at 3.

Based on the evidence presented, the Court finds that the SEC has set forth a reasonable approximation of Rothenberg's ill-gotten gains. The burden then shifts to Rothenberg to show that the SEC's approximation is unreasonable. He fails to meet this burden.

Without offering pertinent numerical values or any financial evidence, Rothenberg asserts three arguments in an effort to reduce the disgorgement amount. First, Rothenberg attempts to relitigate many of the allegations in the SEC's complaint that, for the purposes of this motion, the Court must accept as true. *See* Judgment at 3. In accord with the Judgment, the Court rejects Rothenberg's arguments that he neither misappropriated investor funds, spent misappropriated funds, nor personally benefitted from the misappropriation as alleged in the complaint.

4

Second, Rothenberg argues that the SEC's proposed amount is inaccurate because it fails to account for what he describes as authorized "indirect investments" in his "River Accelerator Investment" companies. ECF No. 90 at 8-9, 12, 15-16. However, the SEC accounts for all proper investments in these companies for which it found evidentiary support. *See* ECF No. 84 ¶¶ 5, 16; ECF No. 92 ¶ 3. Fujimoto examined all pertinent accounting records and did not find any evidence of "indirect investments" of the type Rothenberg describes, ECF No. 92 ¶¶ 5-6, and Rothenberg provides no evidence regarding the specific amounts or existence of these allegedly authorized "indirect investments," *see* ECF No. 90 at 8-9, 12, 15-16.

Third, Rothenberg argues that the $3.1 million Fujimoto identifies as payments to law firms, *see* ECF No. 84-1 at 28, "should be excluded from any disgorgement analysis in this case," ECF No. 90 at 15. He asserts that the Fund Operating Agreements ("Agreements") include provisions indemnifying him in "this lawsuit and any other action or threatened litigation against him arising out of his role in managing the Funds" and authorizing him "to pursue litigation against third parties on behalf of the Funds and charge the costs of litigation to the Funds." ECF No. 90 at 14. While Rothenberg provides the Court copies of these Agreements, he fails to provide any evidence showing that the $3.1 million at issue was authorized by the Agreement provisions he cites. For example, he claims that he spent an unspecified amount of this money on "a pending lawsuit against [Silicon Valley Bank] naming two of the Funds as plaintiffs." *Id*. But the SEC notes that there is no evidence that the particular fund whose assets he used to pay for the lawsuit was a plaintiff or stood to benefit from it. ECF No. 91 at 8. Neither has Rothenberg presented evidence that the attorneys' fees at issue were incurred in defense of suits covered by the Agreements' indemnification provisions. ECF No. 90 at 13. Without such evidence, the Court cannot reasonably conclude what, if any, portion of these legal fees were authorized by the Agreements.

Rothenberg next makes two legally baseless arguments in an attempt to avoid payment of any disgorgement. First, he argues that "this court has no authority to award disgorgement in this case." ECF No. 90 at 28. The statement is incorrect. *See SEC v. World Capital Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017) (in SEC civil enforcement actions, "federal courts may grant any

5

equitable relief that may be appropriate or necessary for the benefit of investors . . . including disgorgement of the gains obtained from securities law violations") (internal quotation marks omitted); *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (district courts have "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws") (internal quotation marks omitted). The "sole question" in the case Rothenberg cites was "whether disgorgement, as applied in SEC enforcement actions, is subject to [a five-year statute of limitations]." *Kokesh v. SEC*, 137 S. Ct. 1635, 1642 n.3 (2017); *see also id.* ("Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings.").[1]

Second, Rothenberg argues that even if the Court has the authority to order disgorgement, "that remedy would necessarily be limited only to the recovery of any so-called ill-gotten gains it can prove are currently in Mr. Rothenberg's possession." ECF No. 90 at 25. Again, Rothenberg misstates the law, which is that "ongoing possession of the funds is not required for disgorgement." *World Capital Mkt.*, 854 F.3d at 1007 ("ongoing possession of the funds is not required for disgorgement"); *see also Platforms Wireless*, 617 F.3d at 1098 ("A person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained."); *JT Wallenbrock*, 440 F.3d at 1116 ("The manner in which [the recipient of ill-gotten funds] chose to spend the illegally obtained funds has no relevance to the disgorgement calculation.").[2] Defendant Rothenberg must therefore pay $18,776,800 in disgorgement, plus an additional $3,663,323.47 in interest, regardless of whether the ill-gotten gains are currently in his possession.

---

[1] As Rothenberg notes, ECF No. 99, the Supreme Court recently granted certiorari on the specific question "[w]hether the Securities and Exchange Commission may seek and obtain disgorgement from a court as "equitable relief" for a securities law violation even though [the Supreme] Court has determined that such disgorgement is a penalty." *Charles Liu, et al. v. SEC,* No. 18-1501 (U.S. Supreme Court, November 1, 2019). This Court must apply the law as it currently stands.

[2] Rothenberg cites *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) in support of the proposition that disgorgement is limited "to the proceeds that were still in possession of the party against whom such equitable relief was sought." ECF No. 90 at 28. The Court notes that this case involves an analysis of the equitable relief contemplated under ERISA § 502(a)(3)(B), not the relevant securities laws.

### B.     Civil Penalties

#### 1.     Legal Standard

The Advisers Act includes three tiers of civil penalties, with the amount of any penalty "determined by the court in light of the facts and circumstances."  15 U.S.C. § 80b-9(e)(2).  First-tier penalties, the least severe, may be imposed for any violation of the Act.  *See id.* § 80b–9(e)(2)(A).  Second-tier penalties may be imposed for violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  *Id.* § 80b-9(e)(2)(B).  Third-tier penalties may be imposed for violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement," and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  *Id.* § 80b-9(e)(2)(C).

The district court has discretion over the specific amount of penalties imposed within each tier.  *SEC v. BIC Real Estate Dev. Corp.*, No. 16-cv-00344-LJO-JTL, 2017 WL 1740136, at *4 (E.D. Cal. May 4, 2017) (citing *SEC v. Brookstreet Sec. Corp.,* 664 Fed. Appx. 654, 656 (9th Cir. 2016)); *see also SEC v. Pentagon Capital Mgmt. PLC,* 725 F.3d 279, 287 (2d Cir. 2013).  Third-tier penalties, however, must not exceed the greater of either the specific statutory amount or "the gross amount of pecuniary gain to such defendant as the result of the violation." 15 U.S.C. § 80b–9(e)(2)(A)-(C).  The Ninth Circuit has articulated five factors for courts to consider in determining the appropriate amount of civil penalties: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations.  *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

#### 2.     Analysis

Here, the SEC seeks third-tier penalties in the amount of $9 million, roughly half the $18.8 million Rothenberg misappropriated from investors.  ECF No. 83 at 20.  The Court finds this tier and amount appropriate.

A third-tier penalty is appropriate in this case because Rothenberg's violation involved

7

fraudulent conduct that resulted in substantial losses for his investors. Rothenberg argues that a third-tier penalty is "unwarranted and completely inappropriate" because "no one has ever even disputed Mr. Rothenberg's assertions that his investors' holdings have significantly appreciated in value relative to their initial investment." ECF No. 90 at 23. This assertion does not help Rothenberg. That his investors made some profit does not excuse his misappropriation – to the contrary, it suggests that they could have made even *more* money had Rothenberg not siphoned off their principal. To state the obvious, investors in a profitable fund are just as entitled to the protections of the law as those in an unprofitable one. The Court finds the SEC has proved that Rothenberg's conduct "resulted in substantial losses" for his investors and that a third-tier penalty is warranted. *Id*. § 80b-9(e)(2)(C).

As for the amount of this penalty, the majority of the *Murphy* factors weigh heavily in favor of the SEC's proposed $9 million. Rothenberg argues that the SEC fails to demonstrate scienter because "[t]here is plenty of evidence to suggest that Mr. Rothenberg believed everything he was doing was lawful." ECF No. 90 at 31 (pointing to the "indirect investment" argument addressed in the disgorgement analysis and alleging that "all of these transactions and operations were done in the open with the assistance of multiple team members . . ."). The SEC, however, points to evidence that Rothenberg altered his accounting records and created fake documents to conceal his actions on multiple occasions. *See*, *e.g.*, ECF No. 84 ¶¶ 24-25, 35-36. This evidence, coupled with Rothenberg's ongoing inability or unwillingness to take responsibility for his actions and recognize the wrongfulness of his conduct, demonstrates that a $9 million civil penalty is appropriate.

## CONCLUSION

For the aforementioned reasons, the SEC's motion is hereby GRANTED. Defendant Michael B. Rothenberg shall pay disgorgement of $18,776,800, plus prejudgment interest of

/ / /

/ / /

/ / /

/ / /

1  $3,663,323.47, for a total of $22,440,123.47.  Rothenberg shall pay an additional civil penalty of
2  $9,000,000.

3  **IT IS SO ORDERED.**

4  Dated:  December 20, 2019



JON S. TIGAR
United States District Judge